*In re* ESTATE OF MYRON J. NAKAERTS, Deceased.—
(PATRICIA NAKAERTS, Petitioner-Appellant and Cross-Appellee, *v.*
ARMAND NAKAERTS, Ex'r of the Last Will and Testament of
Myron J. Nakaerts, Respondent-Appellee and Cross-Appellant.)

Third District No. 81-201

Opinion filed April 29, 1982.

Charles E. Ruch, Jr., of Nutting, Thacker, Sacks & Paulauskis, Ltd., of Kankakee, for appellant.

Ronald E. Boyer, of Fleming, Boyer & Strough, of Watseka, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:
Patricia Nakaerts, widow of decedent Myron Nakaerts, filed petitions in the circuit court of Iroquois County requesting an award as

surviving spouse, seeking to renounce decedent's will and to take the widow's intestate share, requesting a surviving child's award on behalf of her minor son, Lindy Matthew Nakaerts, and asking for unpaid alimony and child support pursuant to a temporary order entered in a marriage dissolution proceeding prior to decedent's death. After an extensive hearing, the trial court awarded $2,752 as unpaid alimony and support and $2,340 for the child's award, and denied all other relief. The widow has appealed, and the executor of decedent's estate has cross-appealed from the order of the trial court which allowed the claim for alimony and child support while refusing to allow credit for social security benefits received by the child while decedent was totally disabled before death.

Patricia and Myron Nakaerts were married in 1960, with each party having children by a prior marriage, and each having a residence of their own. At first the parties lived together with all their children, and a daughter was born of the marriage, but in 1961 the husband and wife separated, with Patricia moving to her home in the city of Clifton, Illinois, where she had a beauty shop business, while Myron continued to live on the farm which he leased. According to Patricia, Myron spent about four nights of seven with her during the time they lived separately.

In 1966 Myron lost his lease and was being forced to move. His mother was willing to deed Myron a 40-acre parcel with a house, provided Patricia would have no rights to it, so Myron retained an attorney who drafted a document entitled "Post-Nuptial Agreement and Property Settlement." The contract provided that each party would own their separate property free from any interest of the other, that neither party would renounce any will executed by the other, and that each would waive a surviving spouse's award. The contract recited that the husband and wife were then living separate and apart and that both were desirous of "making a just and equitable settlement of the property rights that each may have in the property now owned, or hereafter acquired, of the other." Under the terms of the agreement, the husband agreed to pay to the wife $1,500, and Patricia testified that he did pay her that sum and that she spent it. Patricia signed the contract in the lawyer's office on March 14, 1966. It was never recorded. Myron's mother conveyed 40 acres to him, subject to her own life estate, and later Myron was able to purchase another 40 acres of family property. Both parties continued to hold all real estate and personal property, including all bank deposits, separate.

While the parties were ostensibly residing apart, Patricia became pregnant in the summer of 1967, and in September she and her children moved back in with Myron. She gave birth to Lindy in February of 1968, and remained with Myron until March of 1977 when she again left. While living with Myron, Patricia sold her home. She kept the proceeds from the

sale and her income from her beauty shop business separate from Myron's money. The two then shared household expenses, with Patricia paying a proportionate share for her children by a prior marriage.

After Patricia left Myron in 1977, she filed suit for divorce, and the court entered orders for temporary alimony and child support. Myron became disabled after those orders were entered, and from January 1978 until his death, Patricia received social security disability benefits in the amount of $231 for each minor child each month. At that time both minor children of the parties were living with Patricia. The amount of social security benefits received by Patricia exceeded the amount of her claim for unpaid temporary child support.

The trial court entered an order denying the executor's request for a setoff of the social security disability benefits and allowing Patricia's claim for unpaid alimony and support in the amount of $2,752. The court also allowed her petition for a surviving child's award, in the amount of $2,340, and held that her petition for a widow's award and for renunciation of the will were barred by the agreement executed in 1966. This appeal followed.

■■ The first issue before this court is whether, under the law of Illinois, Patricia can be held to have waived irrevocably her statutory widow's award by an agreement entered into while she and Myron were separated when thereafter the parties resumed their marital relationship and had another child. In *Pavlicek v. Roessler* (1906), 222 Ill. 83, 78 N.E. 11, the Illinois Supreme Court said:

> "The widow's award is a statutory allowance made for the benefit of the widow and other members of the family of the decedent, and especially his children of tender years, that they may not be left wholly without support in the days of desolation following the death of the husband and father, and before time or opportunity has been afforded for readjustment to changed conditions. Hence it has been held that the widow cannot release the award by an ante-nuptial contract where there are children entitled to share in the benefit of its protection. [Citations.]" 222 Ill. 83, 86, 78 N.E. 11, 12.

The decision in *Pavlicek v. Roessler* applied the rule of public policy discussed in earlier Illinois cases: that a widow's award is for the joint benefit of the widow and minor children of the decedent, and that the widow has no power to deprive the children of such benefit by contract. (See *Kroell v. Kroell* (1905), 219 Ill. 105, 76 N.E. 62, and cases cited therein.) We are aware of no later decisions rescinding the rule, and we believe the public policy of Illinois remains as stated by the courts in these early cases. During oral argument before this court, the appellee conceded that the law of Illinois required the allowance here of a widow's award

with an additional amount for the child, regardless of the agreement to the contrary, but he said that Patricia waived any such error on the part of the trial court because she did not argue that the agreement violated public policy. Appellee also contends that any error was invited when she petitioned for a separate surviving child's award for the minor child residing with her.

■■ We believe the trial court did not apply the correct rule of law. An error of law can and must be corrected upon review, particularly where the interest of a minor is at stake. "The court has a duty to see that the rights of an infant are adequately protected, and is bound to notice substantial irregularities even though objections are not properly presented on its behalf." (*Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 170 N.E.2d 564.) We believe the contract entered into while the parties were separated is not a bar to Patricia's claim for a surviving spouse's award.

We also believe that this same public policy must be applied here to abrogate the entire agreement and to permit Patricia to renounce the will and obtain the widow's intestate share of Myron's estate. Also, Patricia should not be allowed to contract away the rights of unborn children to inherit from her a portion of their father's estate. The agreement at issue here was executed while the parties were separated, and was expressly in contemplation of their separation. In a similar factual situation, in *Boyd v. Boyd* (1914), 188 Ill. App. 136, 140, the court stated:

> "[S]uch contracts made in contemplation of the parties living separate and apart from each other, or where the element of separation enters into them, or where the separation is an accomplished fact when the contract is made, and without it in all probability the contract would not have been made, are not looked upon with indulgence by the law, and while in some cases they will be enforced while the parties live in separation, yet in our opinion when the parties effect a reconciliation and resume their marital relations fully and completely, such contract is abrogated by the action of the parties themselves and ceases to have any force or effect, at least in so far as it attempts to relieve the husband from the maintenance and support of his wife and children."

The appellee insists that the instant case is distinguishable from those cases which involved executory contracts (separation agreements) because this agreement was a property settlement, not involving support and not contingent upon the parties' continued separation. We conclude that to draw such a distinction here would do violence to the long-established principles of law which we have set forth. Furthermore, we believe that plain common sense would indicate that an agreement of this type should not be considered enforceable after the parties are reconciled and have produced another child. This is not a post-nuptial property

settlement where two persons marry long after the child-bearing years are past and attempt to keep their estates separate for their families by previous marriages. Here the parties married while still relatively young, had one child, separated, then resumed their family life together and had another child. It is in the interest of that child that the mother be allowed to claim a surviving spouse's award so that she can provide a home for the boy and also that she be able to claim her intestate share of the property for his potential benefit. Accordingly, we hold that the order of the trial court must be reversed and remanded for further proceedings.

■■ On cross-appeal, the executor of Myron's estate contends that the trial court erred in allowing Patricia's claim for unpaid temporary alimony and child support without setting off the amounts received by her as social security disability benefits paid on behalf of the parties' minor son when Myron became disabled. Neither party has been able to provide us with any Illinois precedent, and other jurisdictions are divided. See Annot., 77 A.L.R.3d 1315 (1977).

In *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12, the Illinois Supreme Court ruled that a father could not make a unilateral reduction in child support payments when one child reached his majority. In its decision, the court said it is the function of the court to determine whether equitable considerations require a *pro rata* reduction or whether other factors require a different result. "The responsible parent should petition the court for a judicial determination of the amount the support payments should be reduced due to changed circumstances." (81 Ill. 2d 317, 329, 410 N.E.2d 12, 18.) Consistent with this approach is that of the State of Washington, where the courts have held that a father was not entitled to credit against his child support payments for social security disability benefits paid to his child, in the absence of a modification of the original support order, and that the father's disability and the resulting entitlement to benefits are changes in the condition of the parties to be considered by the court but that a modification requires affirmative action by the court. *Chase v. Chase* (1968), 74 Wash. 2d 253, 444 P.2d 145; *Hepton v. Hepton* (1980), 25 Wash. App. 229, 605 P.2d 1288.

We, therefore, conclude that the trial court did not err in refusing to allow a setoff. To have done so would have amounted to a retroactive modification of vested support rights. We affirm the award of $2,752 for unpaid alimony and child support.

Affirmed in part, reversed in part and remanded.

STOUDER and SCOTT, JJ., concur.