Eileen CRAVER, Appellant,

v.

J. Kenneth CRAVER, Respondent.

No. 63982.

Supreme Court of Missouri,
En Banc.

April 26, 1983.

I

Appellant Eileen Craver and respondent J. Kenneth Craver were married on June 18, 1939. On May 7, 1970, they obtained a divorce from the Circuit Court of St. Louis County. The day before the divorce decree was entered the parties executed an agreement providing, among other things, for Kenneth to make semi-monthly support payments to Eileen in lieu of alimony. That portion of the agreement provides:

> The Husband shall, during his lifetime, and commencing immediately upon the granting of a decree of divorce to the Wife, pay the Wife for her support and maintenance the sum of Five Hundred Dollars ($500.00) per month to be paid semi-monthly in equal amounts on the first and fifteenth of the month; when John, son of the parties hereto, reaches his majority or is otherwise emancipated, this payment to Wife would be increased to Six Hundred Dollars ($600.00) per month; provided, however, such obligation to pay shall cease upon the death of either of the parties or the remarriage of the Wife.

John reached majority in September 1974. At all times relevant to this case Kenneth was obligated under the agreement to pay Eileen $600 per month.

Eileen began to receive Social Security retirement benefits in May 1979. Approximately sixty percent of her benefits were drawn from her Social Security account, and approximately forty percent were drawn through Kenneth's account. Kenneth was forced because of cancer to retire at age 64 on June 1, 1979. Until his retirement Kenneth paid Eileen the full amount due under the agreement. Beginning in June 1979, however, Kenneth reduced the amount of his payments to Eileen by the amount he believed Eileen was receiving in Social Security benefits through his account.

Eileen filed the present action for breach of the agreement on March 12, 1981. During the course of discovery Kenneth learned that he had erroneously reduced his payments by more than the amount in Social

Michael F. Merritt, William H. Wyne, Jr., Creve Coeur, for appellant.

J.L. Pierson, Michael A. Vitale, St. Louis, for respondent.

WELLIVER, Judge.

The issue in this case is whether a man contractually bound to pay support in lieu of alimony is entitled, as a matter of law, to reduce his payments by the amount of Social Security benefits that his former wife receives each month through his Social Security account. We hold that he is not.

Security benefits that Eileen received through his account. As a result, he confessed judgment on and paid Eileen $3,201.30, plus interest, on July 31, 1981. He denied, however, that he owed Eileen anything more. Eileen sought by her third amended petition to recover an additional $3,038.70.

The trial court, on cross motions for summary judgment, granted Kenneth summary judgment, and Eileen appealed. The Missouri Court of Appeals, Eastern District, adopted an opinion reversing the judgment, and on Kenneth's application we transferred the case pursuant to Rule 83.03. We review the case as if it were on original appeal, Rule 83.09, and we reverse the judgment of the trial court.

## II

### A

In *McClaskey v. McClaskey*, 543 S.W.2d 832 (Mo.App.1976), the court of appeals held that a retired father bound by decree to pay child support was entitled, apparently as a matter of law, to credit toward future monthly payments the amount in Social Security benefits his children received through his account. The court reasoned that

Missouri's general rule is that a father may not have credit against a child-support judgment other than by his direct payment to the wife. But Missouri courts recognize exceptions under appropriate circumstances and hold that credit should be given to the husband when dictated by equitable considerations.... The rationale of the general rule is that because the wife has been awarded custody of the children and a judgment rendered in her favor for their support it is her privilege and responsibility to determine the manner of spending the funds payable under the judgment. The husband has no absolute right to alter the terms of the decree and dictate the method of furnishing support....

But social security payments differ from non-complying payments made by a father. The wife receives the social security as custodian for the minor children beneficiaries. It is she, not the husband, who determines how the money is to be spent. The only limitation imposed on her use of social security payments is that she use them for the children's benefit. This same limitation is imposed on the use of court-ordered child-support payments. *The use of social security payments to satisfy a child-support obligation is merely a change in the manner of payment; the nature of the funds is the same....* "An order of support is for the benefit of the children, even though directed paid to the mother or other custodian. *If the sum directed to be paid by the father is paid by the government through social security benefits derived from the account of the father, the purpose of the order has been accomplished.* The father is entitled to be credited with such payments against his liability under the decree." ...

Payments prescribed by the Social Security Act are not gratuities or matters of grace; they are not public assistance or welfare payments.... Social security benefits are from funds earned in part by the individual who throughout his working life has contributed to the benefits by deductions from his wages.

*Id.* at 834 (citations omitted) (emphasis added).

In this case the court of appeals, citing *Cohen v. Cohen*, 246 So.2d 581 (Fla.App.), *cert. dismissed,* 255 So.2d 524 (Fla.1971), attempted to distinguish *McClaskey* on the ground that it involved a decretal, rather than a contractual, obligation.[1] Although that is one distinguishing factor, we think for purposes of this case that it is a distinction without a difference and therefore offers little assistance in resolving the issue presented here. The decision in *McClaskey* did not turn on whether the obligation was decretal or contractual. The underlying premise in that case was that the funds the

---

**1.** The parties agree that the obligation in this   case is contractual.

children received from Social Security in effect came from the father because those funds derived from the father's contributions. On that basis the court of appeals held that the Social Security payments "constituted complete satisfaction of the husband's child-support obligations as they thereafter fell due." 543 S.W.2d at 835. Consequently, the present case involves more than a simple contract question. If the *McClaskey* rationale is correct, then it applies with equal force to this case, and Kenneth is entitled to a setoff as a matter of law.

█ We must reject the notion that a contributor possesses any significant property interest in Social Security funds in the hands of the government, for it ignores both the theory behind, and the reality of, the Social Security system. First, the relationship between the government and the contributor is not contractual. *Flemming v. Nestor*, 363 U.S. 603, 610, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960). Second, Congress has always specifically reserved the "right to alter, amend, or repeal any provision" of the Social Security Act. *See* 42 U.S.C. § 1304 (1976). Consequently, whatever equitable interest a contributor might possess is only contingent. It does not rise to the level of a vested property right.

This principle is clearly demonstrated in *Nestor*. In that case the issue was whether an alien who was deported for affiliation with the Communist Party and whose Social Security benefits had been terminated as a result thereof was constitutionally entitled to receive benefits because of his contribution to the system. The Court held that he was not. It explained that

> each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation. It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments.

It is hardly profitable to engage in conceptualizations regarding "earned rights" and "gratuities." ... The "right" to Social Security benefits is in one sense "earned," for the entire scheme rests on the legislative judgment that those who in their productive years were functioning members of the economy may justly call upon that economy, in their later years, for protection .... But the practical effectuation of that judgment has of necessity called forth a highly complex and interrelated statutory structure. Integrated treatment of the manifold specific problems presented by the Social Security program demands more than a generalization. That program was designed to function into the indefinite future, and its specific provisions rest on predictions as to expected economic conditions which must inevitably prove less than wholly accurate, and on judgments and preferences as to the proper allocation of the Nation's resources which evolving economic and social conditions will of necessity in some degree modify.

To engraft upon the Social Security system a concept of "accrued property rights" would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands .... It was doubtless out of an awareness of the need for such flexibility that Congress included in the original Act, and has since retained, a clause expressly reserving to it "[t]he right to alter, amend, or repeal any provision" of the Act.... That provision makes express what is implicit in the institutional needs of the program....

We must conclude that a person covered by the Act has not such a right in benefit payments as would make every defeasance of "accrued" interests violative of the Due Process Clause ....

*Nestor*, 363 U.S. at 609–11, 80 S.Ct. at 1371–73 (citations omitted).

█ This clearly undercuts the rationale of *McClaskey*. Consequently, we need not decide whether we agree with the state-

ment of the court of appeals in *McClaskey* that Social Security payments "are not gratuities or matters of grace." 543 S.W.2d at 834. Regardless of the correctness of that proposition, it would not follow that Social Security funds in any real sense belong to the person to whose account they are credited. The amount in benefits a husband is able to receive is not diminished because his wife receives benefits through his account. That would not be true were the account composed solely of funds to which the husband could claim any true ownership. Furthermore, should the wife die, the husband would have no claim to funds that the wife would receive were she still alive. Finally, as *Nestor* demonstrates, there may be situations in which a contributor cannot enforce whatever interest he may have by virtue of his contribution to the system. We therefore hold that Social Security payments made through the account of the party charged with support do not constitute payments made by that party himself. From this it follows that in this case Kenneth was not entitled, as a matter of law, to a setoff equal to the amount of Social Security benefits Eileen received through his account.[2]

### B

■ Because of the importance of the issue in this case to marriage dissolution proceedings and attendant property settlement negotiations, we feel constrained to observe that our holding applies perforce to both contractual and decretal obligations.

■ Alimony awarded before the effective date of the Dissolution of Marriage Act, and maintenance awarded thereafter, are decretal. *See Haggard v. Haggard,* 585 S.W.2d 480, 481–82 (Mo. banc 1979). Under the system that existed before enactment of the Dissolution of Marriage Act, an agreement such as the one in this case to provide support in lieu of alimony was contractual. *See id.* at 482. The Dissolution of Marriage Act has not eliminated contractual arrangements, but absent an expressed intent to

the contrary any such agreement, as long as it is not found to be unconscionable, is incorporated into the judgment and becomes decretal. *Id.* Child support, of course, must always be decretal so that it is within the control of the Court. *See* § 452.325(6), RSMo 1978. The principal differences between contractual and decretal obligations lie in modification and enforcement. Decretal obligations may subsequently be modified by the court, but contractual obligations may not be modified absent mutual consent of the parties or a showing of fraud, duress, or illegality. *Haggard,* 585 S.W.2d at 481–82. Decretal obligations are enforceable as judgments by a levy of execution, but contractual obligations are enforceable only by a separate suit on the contract. *Id.*

Contractual obligations to provide support in lieu of alimony or maintenance thus are governed by the terms of the contract. Any dispute concerning those terms should be resolved in accordance with ordinary and accepted principles of contract construction. The prudent attorney, as legal draftsman, no doubt will seek to express in the contract itself the intent of the parties regarding the effect of Social Security benefits upon the obligation to pay.

We are aware that the extent to which this opinion undercuts the rationale of *McClaskey* may create uncertainty and confusion with respect to decretal obligations. In the interest of the orderly disposition of domestic relations cases by our courts, we believe it both necessary and desirable that we address what we view to be the effect of this opinion on decretal obligations. We do so acknowledging that what we say in this regard is dictum.

Decretal obligations involve a consideration different from those considerations that affect contractual obligations. Because decretal obligations are subject to modification upon the motion of either party, the real issue is which party should bear the burden of seeking modification if the party

---

**2.** We deal here only with Social Security benefits. We express no view regarding other forms of governmental assistance, such as wel-

fare payments. *See State ex rel. Division of Family Servs. v. Willig,* 613 S.W.2d 705, 707 & n. 4 (Mo.App.1981).

receiving alimony, maintenance, or support receives Social Security through the account of the party obligated to pay. *McClaskey* appears to hold that the obligor may make a unilateral reduction in his payments without affirmative action by the court. Courts in other states have reached the same conclusion. *See Binns v. Maddox,* 57 Ala.App. 230, 233, 327 So.2d 726, 728 (1976); *Andler v. Andler,* 217 Kan. 538, 543–44, 538 P.2d 649, 653–54 (1975); *Cohen v. Murphy,* 368 Mass. 144, 147, 330 N.E.2d 473, 475 (1975); *Schulze v. Jensen,* 191 Neb. 253, 257–58, 214 N.W.2d 591, 594 (1974). *See also Horton v. Horton,* 219 Ga. 177, 178, 132 S.E.2d 200, 201 (1963). In each of those cases, however, the court apparently assumed, as did the court of appeals in *McClaskey,* that the payment of Social Security benefits through the obligor's account constituted payment by the obligor himself. That, as we have demonstrated, is an erroneous assumption. If the obligor is to be allowed to reduce his payments by the amount of Social Security benefits paid through his account, it must be because the changed economic circumstances of the parties entitle him to do so. This determination must be made by the court that maintains control over the decree. As the Washington Supreme Court stated in *Chase v. Chase,* 74 Wash.2d 253, 444 P.2d 145 (1968), a child support case,

> disability and resulting entitlement to social security are changes in condition of the parties to be considered in a modification [proceeding] but do not give rise to a modification or deduction without affirmative action by the court for they are not necessarily determinative. The father may be independently wealthy; or he may, in the interim, have inherited property. Benefits from private or public retirement systems may have accrued and become payable to him. In short, many developments affecting the economic condition of the parties may have occurred which would not permit or warrant a modification of the decree to the extent of deducting the social security benefits for dependent children from the child support ordered in a decree of divorce.

*Id.* at 259, 444 P.2d at 149. Other courts have followed this rule. *See Fowler v. Fowler,* 156 Conn. 569, 572–74, 244 A.2d 375, 377 (1968); *Nakaerts v. Nakaerts,* 106 Ill.App.3d 166, 170, 61 Ill.Dec. 950, 435 N.E.2d 791, 794–95 (1982); *Gibson v. Gibson,* 110 Mich.App. 666, 670, 313 N.W.2d 179, 181 (1981); *Joachim v. Joachim,* 57 A.D.2d 546, 547, 393 N.Y.S.2d 63, 64–65, *appeal dismissed,* 42 N.Y.2d 1011, 368 N.E.2d 285, 398 N.Y.S.2d 535 (1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1242, 55 L.Ed.2d 767 (1978). *See also Cash v. Cash,* 234 Ark. 603, 353 S.W.2d 348 (1962). We think this approach is fundamentally sound and should be followed in Missouri. As between the parties, the burden of seeking modification of the support obligation should lie with the party seeking to credit Social Security benefits in order to reduce the amount of the payments owing under the decree. To the extent that *McClaskey* is inconsistent with this view, it no longer should be followed.[3]

### III

Our holding that Kenneth is not entitled as a matter of law to credit against his support payments the Social Security benefits Eileen receives through his account does not finally resolve this case. There remains the question whether in any event

---

3. Only one Missouri case has followed *McClaskey,* and it did so perfunctorily. *Newton v. Newton,* 622 S.W.2d 23, 25 (Mo.App.1980). Obviously *Newton* should no longer be followed if *McClaskey* is not.

We emphasize that our discussion here concerns only a setoff for future payments. We have no occasion to consider the other holding in *McClaskey* that the father there was not entitled to credit against his delinquent child support payments the amount of a lump sum Social Security payment that represented accumulated but previously unpaid benefits. 543 S.W.2d at 835. We note, however, that this holding, based largely on equitable considerations, has been adopted by at least one other court. *Mask v. Mask,* 95 N.M. 229, 231–32, 620 P.2d 883, 885–86 (1980).

Kenneth is entitled to a setoff under the terms of the agreement. Each of the parties refers in his brief to his intent at the time the agreement was executed.[4] We also note that the agreement in this case contains no integration clause. On the state of the record before us, limited as it is because of the trial court's entry of summary judgment, we have no basis upon which to make a final ruling.[5] We decline to follow the inflexible approach in *Cohen* that there can be no setoff absent a specific contractual provision allowing it. 246 So.2d at 582–83. Where the matter is not specifically covered, construction of the contract is a matter for the trial court in the first instance.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

HIGGINS, GUNN and DONNELLY, JJ., and FINCH, Senior Judge, concur.

RENDLEN, C.J., dissents in separate opinion filed.

SEILER, Senior Judge, dissents and concurs in separate dissenting opinion of RENDLEN, C.J.

BILLINGS, J., not sitting.

4. Eileen states in her brief that "[t]he fact is" that when she entered into the agreement she "counted on Social Security supplementing the contractual payments." Kenneth states that when the agreement was executed he "was in good health and working full-time" and "anticipated that he would continue working full-time until retirement at age 65 with a full pension." He claims that because cancer forced his early retirement his pension income was decreased by approximately $200 per month and his Social Security benefits were decreased by approximately $50 per month.

5. We note in addition that in her third amended petition Eileen alleged that Kenneth "wilfully breached the ... contract further by failing to maintain [Eileen] as sole and irrevocable beneficiary of a $25,000 life insurance policy on [Kenneth's] life" and sought an order that Kenneth be required to maintain her as the beneficiary on the policy. Kenneth, of course, disputes this contention. Nothing in the record before us indicates that this dispute has ever

BLACKMAR, J., not participating because not a member of the Court when cause was submitted.

RENDLEN, Chief Justice, dissenting.

I respectfully dissent. The Social Security old-age benefits program is in the nature of a retirement program, and payments constitute a substitute, sometimes the sole substitute, for a contributor's income. The principal opinion concludes that because the husband possesses no vested contract rights in Social Security old-age insurance benefits paid to his former wife on the basis of his earnings record, such payments do not constitute support payments by the husband. It is true that Social Security benefits earned by the husband are contingent before received, but all contingencies disappear when the wife actually receives payments. The husband's employment, moreover, is the sole basis for his former wife's benefits, and the amount of his salary determines the size of her payments. In my view, the husband's contribution to accrual of his former wife's benefits and the derivative nature of her entitlement give the husband sufficient interest in the benefits for their payment to constitute payment by him.

The Eastern District Court of Appeals,[1] the Supreme Courts of Arkansas,[2] Georgia,[3]

been resolved. Neither Kenneth's nor Eileen's motion for summary judgment refers to it.

1. *Newton v. Newton*, 622 S.W.2d 23, 25 (Mo. App.1981) (social security disability payments to minor children credited toward father's child support obligation under divorce decree); *McClaskey v. McClaskey*, 543 S.W.2d 832, 835 (Mo.App.1976) (social security retirement payments to minor children credited toward father's child support obligation under divorce decree).

2. *Cash v. Cash*, 234 Ark. 603, 353 S.W.2d 348, 350 (Ark.1962) (social security retirement payments to minor children credited toward father's child support obligation under divorce decree).

3. *Horton v. Horton*, 219 Ga. 177, 132 S.E.2d 200, 201 (Ga.1963) (social security disability payments to minor children credited toward father's child support obligation under divorce decree).

Kansas,[4] Massachusetts,[5] Mississippi [6] and Nebraska,[7] and the Alabama Court of Appeals [8] have adopted a similar view. It is only equitable that in the absence of contract to the contrary, a husband should be entitled to reduce his monthly support payments by the amount of Social Security benefits received each month by his former wife on account of his earnings and as a substitute for his salary.

---

4. *Andler v. Andler,* 217 Kan. 538, 538 P.2d 649, 654 (Kan.1975) (social security disability payments to minor children credited toward father's child support obligation under divorce decree).

5. *Cohen v. Murphy,* 368 Mass. 144, 330 N.E.2d 473, 474 (Mass.1975) (social security and veterans disability payments to minor children credited toward father's child support obligation under divorce decree).

6. *Mooneyham v. Mooneyham,* 420 So.2d 1072, 1074 (Miss.1982) (social security disability payments to minor children credited toward fa-

ther's child support obligation under divorce decree).

7. *Schulze v. Jensen,* 191 Neb. 253, 214 N.W.2d 591, 594 (Neb.1974) (social security disability benefits for minor children credited toward father's child support obligation under divorce decree).

8. *Binns v. Maddox,* 57 Ala.App. 230, 327 So.2d 726, 728 (Ala.Civ.App.1976) (social security disability benefits for minor children credited toward father's child support obligation under divorce decree).