412 S.E.2d 261

**Erma FARLEY, Plaintiff Below,**

v.

**Max FARLEY, Sr., Defendant Below.**

**STATE of West Virginia ex rel. DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Appellant,**

v.

**Max FARLEY, Sr., Appellee.**

**No. 19902.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Dec. 12, 1991.

Robert Reed Sowa, Child Advocate Office, Sutton, for appellant.

William W. Talbott, Webster Springs, for appellee.

NEELY, Justice:

Max Farley and Erma Farley, although not married, lived together for over twenty years and had four children. When Mr. and Mrs. Farley separated in 1982, two children were still under the age of eighteen, so Mr. Farley agreed to a support order, sanctioned by the court, under which Mr. Farley was to pay $150 per month per child during the months that he was employed. Even after 1986, when Mr. Farley became disabled, he continued to make payments when he could. Mrs. Farley received support from the Aid to Families with Dependent Children [AFDC] program and subrogated her support rights to the West Virginia Department of Health and Human Resources [DHHR].

The circuit court modified the original agreement several times. On 30 March 1984 the circuit court amended the support agreement to provide that Mr. Farley was required to pay child support *only* when he was employed. However, a subsequent 10 August 1985 modification order awarded $92 in cash to Mrs. Farley and then went on to recite the obligation to pay $150 per month per child until the children reached eighteen, but without the requirement that Mr. Farley be employed.

In 1990, the Family Law Master found Mr. Farley to be $3,283 in arrears, of which $2,488.21 was owed to DHHR under their subrogation rights; however, the Law Master prohibited DHHR from collecting. Mr. Farley maintains that he was not in arrears because he did not owe an obligation after 1986 when he became disabled. The Child Advocate, on the other hand, argues that Mr. Farley should not be excused from his support obligation because he wasn't working in light of the fact that Paragraph 5 of the 10 August 1985 Child Support Order omitted the condition precedent which appeared in earlier orders, namely that Mr. Farley be employed before he was obligated to pay $150 per month per child in support.

On 16 November 1989 the Social Security Administration determined that Mr. Farley was totally disabled as of 5 May 1986. Mr. Farley received a lump sum payment of $12,705, and Mrs. Farley received a lump sum payment of $7,871.25 for the dependent children. In May 1990, Mr. Farley began receiving $821.90 per month for his own support and Mrs. Farley began receiv-ing $411 per month for the support of the two children.

■ Assuming *arguendo* that the court's modification order of 10 August 1985, which omitted the proviso that Mr. Farley was liable for child support *only* when he was working, was *not* a clerical error, the question now before us is whether Mrs. Farley's check for $7,871.25 should be credited against Mr. Farley's child support arrearages of $3,283. Under the facts of this case we find that it should.

### I.

At the outset, it is important to point out that in this case there is absolutely no evidence of bad faith or recalcitrance on the part of Mr. Farley, the debtor father. Mr. Farley worked more or less regularly from the time of separation until he was disabled in 1986, and when he worked he paid his support regularly. Furthermore, the reason that Mr. Farley's arrearages are only $3,283 is that he continued to pay support from his Workers' Compensation checks until his temporary total disability benefits were exhausted. There is absolutely no suggestion in the record that Mr. Farley's total income exceeds the wages he once earned or the disability benefits he now receives from Social Security.

### II.

■ The great weight of authority throughout the states is that social security is similar to a private insurance contract and benefits paid to dependents directly by Social Security are credits against the insured's support obligation.[1] The reason

---

1. The clear majority view gives the supporting spouse credit against his or her child support payments or payments to the dependent spouse under his or her social security disability. At least eighteen states follow this view, while only five do not give the supporting spouse credit toward his or her support payment. *See* Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made For Benefit of Child,* 77 A.L.R.3d 1315, § 5. *See also, Binns v. Maddox,* 57 Ala.App. 230, 327 So.2d 726 (1976); *Bowden v. Bowden* 426 So.2d 448 (Ala.App.1983) (applying North Carolina law); *Lopez v. Lopez,* 125 Ariz. 309, 609 P.2d 579 (Ariz.App.1980). *Cash v. Cash,* 234 Ark. 603, 353 S.W.2d 348 (1962); *Re Marriage of Denney,* 115 Cal.App.3d 543, 171 Cal.Rptr. 440 (2d Dist.1981); *Horton v. Horton,* 219 Ga. 177, 132 S.E.2d 200 (1963); *Potts v. Potts,* 240 N.W.2d 680 (Iowa 1976); *Andler v. Andler,* 217 Kan. 538, 538 P.2d 649 (1975); *Cohen v. Murphy,* 368 Mass. 144, 330 N.E.2d 473 (1975); *Schulze v. Jensen,* 191 Neb. 253, 214 N.W.2d 591 (1974); *Re Marriage of Meek,* 669 P.2d 628 (Colo.App.1983); *Perteet v. Sumner,* 246 Ga. 182, 269 S.E.2d 453 (1980); *Boyes v. Boyes,* 247 N.W.2d 265 (Iowa 1976); *Newman v. Newman,* 451 N.W.2d 843 (Iowa 1990); *Board v. Board,* 690 S.W.2d 380 (Ky. 1985); *Folds v. Lebert,* 420 So.2d 715 (La.App. 1982); *Mooneyham v. Mooneyham,* 420 So.2d

for this conclusion is that everyone who works pays 7.65 percent of his or her wages up to a limit of $53,400 a year for old age, survivors, disability, and medicare coverage while the employer contributes an equal amount.[2] Almost all economists agree that this scheme appropriates 15.3 percent of the total wage fund of everyone earning less than $53,400 to pay the social security insurance premiums. That, then, is money that cannot be spent by the wage earner on fast horses, old whiskey and wild parties.[3]

Although it is easy to conclude that social security disability benefits should be viewed as credits toward a parent's child support payments, a more difficult question concerns the mechanics for crediting such benefits. We have been Rhadamanthine in our pronouncements that support payments can be modified only prospectively and not retrospectively. *See Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987); *Zirkle v. Zirkle,* 172 W.Va. 211, 304 S.E.2d 664 (1983). Although this rule inevitably works hardship in a few cases, any alternative rule would be utterly unworkable because under such an alternative rule a person owed support who brought an action for contempt to enforce a support award would be required to justify anew the amount of the original award.

Nonetheless, whenever a court attempts to fashion legal rules, it is important to be guided by reality and not by theory. The case of Mr. and Mrs. Farley is instructive because here we have struggling people from the blue collar class. Mrs. Farley is currently represented by the Child Advocate Office for free, and although Mr. Farley's brief in the case before us was written by a private lawyer, one would suspect that if Mr. Farley is paying full freight, it is only because of his back social security award. In any event, Mr. Farley is not the type of person who consults his lawyer on a daily basis to make sure that his life is lived in conformity with the headnotes in our latest advance sheets.

▮ Consequently, when the Social Security Administration awards a lump sum payment to the caretaker of dependent children, a court *may* credit the amount received to any accrued arrearage, but is not required to do so. Thus, in this one instance we allow direct social security payments to be credited to the debtor spouse against arrearages, but it is the obligation of the debtor spouse to seek court approval for such credit and to seek a new court order concerning child support that takes into consideration, if warranted, social security's monthly payments.

### III.

The great weight of authority is that social security back pay awards are credits against child support arrearages *when the disabled debtor has operated in good faith* and there are no other extraordinary circumstances that would militate in favor of a different result. Indeed, even the July 1991 *Child Support Prosecutors' Bulletin,* a bi-monthly collaboration between the U.S. Department of Health and Human Services and the Child Support Project of the American Bar Association Center on Children and the Law, argues as follows:

1072 (Miss.1982); *Newton v. Newton,* 622 S.W.2d 23 (Mo.App.1981); *Hanthorn v. Hanthorn,* 236 Neb. 225, 460 N.W.2d 650 (1990); *Griffin v. Avery,* 120 N.H. 783, 424 A.2d 175 (1980); *Mask v. Mask,* 95 N.M. 229, 620 P.2d 883 (1980); *Romero v. Romero,* 101 N.M. 345, 682 P.2d 201 (1984); *Passaro v. Passaro,* 92 App. Div.2d 861, 459 N.Y.S.2d 839 (2d Dept.1983); *Guthmiller v. Guthmiller,* 448 N.W.2d 643 (N.D.1989); and *Commonwealth v. Vogelsong,* 311 Pa.Super. 507, 457 A.2d 1297 (1983).

**2.** As with anything the federal government does these days it isn't quite that simple. All employees pay 6.2 percent for old age, survivors, and disability insurance on the first $53,400 of their income in 1991. 26 U.S.C. § 3101(a); 56 Fed. Reg. 55325–01. We also contribute 1.45 percent as hospital insurance on the first $125,000 of income in 1991. 26 U.S.C. § 3101(b); 56 Fed. Reg. 55325–01.

**3.** Employees who have paid the premiums then qualify for benefits under social security insurance. Those who do not work and, therefore, do not pay the premiums, do not qualify for benefits. *See, e.g.,* 42 U.S.C. § 414. Instead, those who have not paid premiums receive the lesser coverage provided by the welfare system.

The better approach, however, is to leave the matter of credit to the discretion of the courts. This appears to be the majority conclusion. In *Craver* [i.e. *Craver v. Craver*, 649 S.W.2d 440 (Mo. 1983)] the court noted that the onset of disability might warrant a modification of support, to be ordered by the trial court. The court relied on decisions from Arkansas, Connecticut, Illinois, Michigan, and New York. *Fowler v. Fowler*, 156 Conn. 569, 244 A.2d 375 (1968); *Nakaerts v. Nakaerts* [106 Ill. App.3d 166, 61 Ill.Dec. 950] 435 N.E.2d 791 (1982); *Gibson v. Gibson* [110 Mich. App. 666] 313 N.W.2d 179 (1981); *Joachim v. Joachim* [57 A.D.2d 546] 393 N.Y.S.2d 63 (1977); *Cash v. Cash* [234 Ark. 603] 353 S.W.2d 348 (1962). Even so, the *Craver* opinion was criticized by the Superior Court of Pennsylvania in *Children and Youth Services v. Chorgo* [341 Pa.Super. 512] 491 A.2d 1374 (1985), as requiring an affirmative decision to allow credit. The *Chorgo* court adopted a rule presuming credit, but allowing the presumption to be rebutted. The court focused on the belief that the obligor spouse had "earned" the disability which is paid to the custodial parent. To exercise discretion the trial court is to ascertain what other financial resources are available.

Consequently, we hold that in the single instance of lump sum disability payments, a debtor spouse may be given *retroactive* credit when: (1) the debtor spouse has acted in good faith and has promptly sought court approval of the credit of social security against child support; (2) in the discretion of the trial court, there were no other assets reasonably available from which child support payments could have been paid; and (3) there were no other changes in circumstances that, in their totality, militate against awarding credit. Indeed, we agree with a majority of our sister jurisdictions that social security disability payments to the custodian of dependents are presumptively a credit against child support obligations.

In the case before us, we note that Mrs. Farley's child support payments are $111

above what she would have received from Mr. Farley if Mr. Farley had worked full time, and that if we combine Mr. Farley's $821.90 per month disability payment with Mrs. Farley's $411 per month dependency payment, the $411 per month substantially exceeds the $270.44 child support payment that would be dictated by the child support guidelines for a person making $1,232.90 a month after taxes.

Accordingly, the judgment of the Circuit Court of Webster County is affirmed.

Affirmed.