Andrea L. VILLINES, Appellant–
Respondent,

v.

Comer "Rex" PHILLIPS, Respondent–
Appellant.

Nos. WD 71926, WD 71974, WD 72036.

Missouri Court of Appeals,
Western District.

Oct. 25, 2011.

Hugh F. O'Donnell III and Michael L. Belancio, Kansas City, MO, for appellant-respondent.

Nancy A. Garris, Blue Springs, MO, for respondent-appellant.

Before Division Two: MARK D. PFEIFFER, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Andrea Villines ("Mother") appeals from the trial court's amended judgment of paternity claiming that the trial court erred in: (1) failing to find either Mother or Comer "Rex" Phillips ("Father") responsible for medical insurance coverage for their minor child ("Child"); (2) ordering Mother to notify Father of any change in address and phone number even though Father was not awarded custodial or visitation rights; and (3) crediting Father's child support obligation by derivative Social Security retirement benefits received by Child.

Father cross-appeals claiming that the trial court erred in: (1) ordering Father to pay Mother's medical expenses and attorney's fees in violation of his due process rights; (2) its calculation of Father's child support obligation; and (3) ordering Father to pay the attorney's fees of Sandra Hessenflow ("Hessenflow"). We affirm.

**Factual and Procedural History**

In 1994, when Mother was sixteen years old, her mother, Barbara Knoche ("Knoche"), was handling the estate of Mother's grandmother. During this time, Mother and Knoche were residing with Ward Slusher ("Slusher"), who was in ill-health.[1] Father, then fifty-two, was Slusher's power of attorney. Father had a key to Slusher's residence. Father would enter Slusher's residence at will, and began a physical relationship with Mother. The

relationship continued until 2000 when Mother ended the relationship.

Mother married Claude Villines ("Villines") in 2001. In 2004, Mother and Villines separated.

In the Spring of 2008, Mother determined she was pregnant. Prior to this time, Mother had reestablished a physical relationship with Father. On March 31, 2008, the trial court entered a judgment legally separating Villines and Mother. The judgment of separation was entered subject to Mother's submission of proof of pregnancy as Mother notified the court that she believed she was pregnant. The trial court noted that Mother had stated under oath that Father was the father of Child, not Villines.

On April 22, 2008, Mother filed a Petition for Determination of a Father–Child Relationship and Motion for Blood Testing ("Mother's Petition"), effectively joining Father as a third-party defendant in her legal separation proceeding. On May 28, 2008, Father filed a pro se Answer stating that he agreed with count one (that he is the biological father of Child) and count two (requesting blood testing to confirm that Villines is not the father of Child).

Child was born on November 20, 2008. On December 12, 2008, the trial court entered a judgment of decree and dissolution of marriage dissolving the marriage of Villines and Mother. A nunc pro tunc judgment was entered on January 8, 2009, apparently for the purpose of restoring Mother's maiden name.

On March 16, 2009, Father, who was now represented by counsel, filed his third party respondent's answer to petition for determination of father-child relationship

---

1. It is unclear what relationship Slusher had with the Knoche family but Mother affectionately referred to him as her grandfather. Knoche testified that she was his ad litem guardian conservator before Slusher appointed her as his legal guardian and Blue Ridge Bank as his conservator.

and third party respondent's counter-petition for declaration of paternity, order of support, visitation, support and attorney's fees ("Father's Petition"). Father conceded that he is, in fact, the Father of Child (a fact that had been conclusively established by blood testing); that it would be in the best interests of Child to award Mother sole legal and sole physical custody with no specific rights of visitation awarded to Father; and that child support should be calculated pursuant to Missouri Supreme Court child support guidelines.

Trial was held on October 27–28, 2009. On the first day of trial, Mother orally requested leave to file a first amended petition for paternity ("Amended Petition") which specifically requested that Father be ordered to pay the birthing costs for Child incurred by Mother, and Mother's attorney's fees. Mother's original petition had not specifically requested this relief, but had requested all equitable relief deemed appropriate by the trial court. Father objected to affording Mother leave to file the Amended Petition on the day of trial to specifically plead these elements of damages, and argued if the damages were not specifically pled, they could not be recovered.

The trial court advised the parties that it did not believe Mother had any obligation to specifically plead attorney's fees as a condition to its ability to award attorney's fees. With respect to the birthing costs, the trial court denied Mother's request for leave to file the Amended Petition. However, the trial court advised that if Mother could provide the court with authority permitting the recovery of her birthing costs without those costs having been specifically pled, then it would take her request for recovery of birthing costs into consideration in rendering its Judgment. The trial court afforded Mother one week after trial to submit additional briefing on the subject.

Within a week of trial, Mother filed a motion to reconsider her oral motion to file the Amended Petition. Mother argued that her desire to recover her birthing costs and attorney's fees was known to Father as the subjects had been addressed in discovery and in the case management report submitted to the trial court, and that Father had asserted no claim that he would be prejudiced by the Amended Petition. Mother also argued that section 210.841.3[2] expressly authorized an award of Mother's reasonable expenses of pregnancy, and that section 210.839.6 permitted the introduction of evidence of those expenses without third-party foundation testimony so long as copies of the records supporting the expenses had been provided to Father not less than seven days prior to trial. Father does not argue that he did not receive the records supporting Mother's birthing costs at least seven days before trial. Evidence of Mother's birthing costs was offered and received into evidence at trial, though subject to Father's objection to the proposed amended petition.

On December 9, 2009, the trial court granted Mother's motion for leave to file the Amended Petition. On that same date, the trial court entered its judgment of paternity. Father filed a motion to amend the judgment. Mother did not file a motion to amend the judgment. The trial court sustained Father's motion to amend the judgment and entered an amended judgment of paternity on January 20, 2010 ("Judgment"). Mother appeals and Father cross-appeals.

### Standard of Review

■ "Our standard of review in a paternity action is governed, as in any court-

2. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

tried case, by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Huber ex rel. Boothe v. Huber*, 204 S.W.3d 364, 367 (Mo. App. W.D.2006). "Accordingly, 'we will affirm the trial court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law.'" *Id.* (quoting *Sewell–Davis v. Franklin*, 174 S.W.3d 58, 59 (Mo.App. W.D.2005)).

## Mother's Point I

For her first point, Mother claims that the trial court erred because the Judgment failed to include a finding designating either Mother or Father responsible for Child's medical insurance coverage as required by sections 210.841.3(1) and 454.603.

Section 210.841.3(1) provides, "The judgment or order shall contain the Social Security number of each party and may contain any other provision directed against the appropriate party to the proceeding concerning: (1) The duty of support." Section 454.603.1 provides:

> At any state of a proceeding in which the circuit court or the division has jurisdiction to establish or modify an order for child support, including but not limited to actions brought pursuant to this chapter, chapters 210, 211, and 452, RSMo, the court or the division shall determine whether to require a parent to provide medical care for the child through a health benefit plan.

We have interpreted section 454.603.1 as imposing a statutory obligation on a trial court to make a finding as to the availability of a health insurance plan and to assign responsibility to one of the parties to maintain health insurance coverage for the Child. *Pease v. Pease*, 877 S.W.2d 681 (Mo.App. W.D.1994); *In re Marriage of Turner*, 5 S.W.3d 607 (Mo.App. S.D.1999); *Hosack v. Hosack*, 973 S.W.2d 863 (Mo.

App. W.D.1998). The Judgment did not include these findings.

Mother, however, has waived her right to seek relief on this basis. Rule 78.07(c) provides that: "In all cases, allegations of error relating to the form or language of the judgment, including *the failure to make statutorily required findings*, must be raised in a motion to amend the judgment in order to be preserved for appellate review." (Emphasis added.)

The purpose of Rule 78.07(c) is to ensure that complaints about the form and language of judgments are brought to the attention of the trial court where they can be easily corrected, alleviating needless appeals, reversals, and rehearings. *See Wilson–Trice v. Trice*, 191 S.W.3d 70, 72 (Mo.App. W.D.2006). This rule has been applied to dismiss a variety of allegations of error on the basis that they were not preserved for appellate review due to a failure to raise the issue in a Rule 78.07(c) motion to amend the judgment. See, e.g., *Crow v. Crow*, 300 S.W.3d 561, 566 (Mo.App. E.D.2009) (failure to make findings regarding child support amount under Rule 88.01); *Stuart v. Ford*, 292 S.W.3d 508, 517 (Mo.App. S.D.2009) (lack of finding regarding party's current ability to pay judgment of contempt); *In re M.D.D., Jr.*, 219 S.W.3d 873, 875 (Mo.App. S.D. 2007) (failure to make statutorily required findings regarding termination of parental rights); *Wilson–Trice*, 191 at 72 (failure to make statutorily required findings to support custody award).

*Gerlt v. State*, 339 S.W.3d 578, 584 (Mo. App. W.D.2011) (citation omitted). Mother did not file a post trial motion requesting the trial court to amend its Judgment to make the statutory findings required by section 454.603.1. Mother's failure to file a Rule 78.07(c) motion requires the denial of her first point on appeal. Even if the trial

court's statutory obligation to assign to one parent the obligation to maintain health insurance on the Child is not subject to Rule 78.07(c), we would not find that the trial court's failure to specifically reference which parent would have the obligation to provide insurance prejudiced Mother.[3]

Point one is denied.

### Mother's Point II

■ For her second point, Mother contends that the trial court's Judgment erroneously included the statutory relocation language found at section 452.377.11,[4] and thus imposed an obligation on Mother to provide sixty days advance notice to Father should she seek to relocate the principal residence of Child even though Father was awarded no custody of or visitation with Child. We disagree.

As previously discussed, Mother did not file a Rule 78.07(c) motion, and thus did not bring this claim of error to the trial court's attention while the trial court retained the authority to amend or modify the Judgment. As a result, Mother's point relied on preserves nothing for appellate review.

In any event, Mother's point would fail on the merits. Section 452.377.11 provides:

> After August 28, 1998, every court order establishing or modifying custody or visitation *shall* include the following language: "Absent exigent circumstances as determined by a court with

jurisdiction, you, as a party to this action, are ordered to notify, in writing by certified mail, return receipt requested, and at least sixty days prior to the proposed relocation, each party to this action of any proposed relocation of the principal residence of the child, including the following information:

> (1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

> (2) The home telephone number of the new residence, if known;

> (3) The date of the intended move or proposed relocation;

> (4) A brief statement of the specific reasons for the proposed relocation of the child; and

> (5) A proposal for a revised schedule of custody or visitation with the child.

> Your obligation to provide this information to each party continues as long as you or any other party by virtue of this order is entitled to custody of a child covered by this order. Your failure to obey the order of this court regarding the proposed relocation may result in further litigation to enforce such order, including contempt of court. In addition, your failure to notify a party of a relocation of the child may be considered in a proceeding to modify custody or visitation with the child. Reasonable costs and attorney fees may be assessed against you if you fail to give the required notice."

---

3. The evidence at trial was that Child was receiving Medicaid and that Mother testified that she was going to secure medical insurance for Child. "We presume that all evidence was considered by the trial court and view the evidence in the light most favorable to the trial court's judgment." *Stoller v. Stoller*, 330 S.W.3d 814, 818 (Mo.App. S.D.2011). As the trial court apparently presumed in

reliance on Mother's testimony that Mother would provide insurance, Mother cannot claim and has not identified any prejudice she has suffered as a result of the absent statutory findings required by section 454.603.1.

4. The record supports Mother's contention that neither she nor Father asked for the inclusion of this language in the Judgment.

Despite Mother's bare assertion to the contrary, our courts have routinely enforced this statutory provision in paternity actions. *See Hueckel v. Wondel*, 270 S.W.3d 450 (Mo.App. S.D.2008) (after judgment of paternity as to child born out of wedlock, mother sought relocation; trial court reviewed whether mother's notice complied with the requirements of section 452.377); *Wright ex rel. McBath v. Wright*, 129 S.W.3d 882 (Mo.App. W.D.2004) (mother found in contempt of paternity judgment for failing to follow the relocation notice requirements in section 452.377).

The plain language of section 452.377.11 imposes an unfettered obligation to incorporate the statutory relocation language into "every court order establishing or modifying custody or visitation." The statutory relocation language imposes the "obligation to provide this information to each party . . . as long as you or any other party by virtue of this order is entitled to custody of a child covered by this order." Section 452.377.11 does not except from its reach orders that award one parent no custodial or visitation rights, in likely recognition of the fact that a non-custodial parent always retains the right to seek modification of a custodial order.

Point two is denied.

### Mother's Point III

■ In her third point relied on, Mother claims that the trial court erred by crediting Father's monthly child support obligation by the amount Child was receiving from Social Security as a derivative of Father's retirement benefits in violation of section 452.340.9. We disagree.

Section 452.340.9 provides in pertinent part that:

There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support,

that the amount of the award which would result from the application of the guidelines established pursuant to subsection 8 of this section is the correct amount of child support to be awarded. A written finding or specific finding on the record in a judicial or administrative proceeding that the application of the guidelines would be unjust or inappropriate in a particular case, after considering all relevant factors . . . *is required if requested by a party* and shall be sufficient to rebut the presumption in the case.

(Emphasis added.) Mother complains that the trial court credited Father's presumed child support obligation of $2,075 per month by $775.00, (the amount received by Child each month from Social Security calculated based on Father's Social Security retirement benefits), without finding that the presumed child support amount is unjust or inappropriate as required by section 452.340.9. However, Mother does not argue, and the record does not suggest, that either Mother or Father requested such a finding. Moreover, even if Mother or Father had requested such a finding, Mother did not file a Rule 78.07(c) motion requesting amendment of the Judgment to include such a finding. Mother's point relied on insofar as it claims error pursuant to section 452.340.9 is without merit.

Mother then generally argues that the Missouri Supreme Court has proclaimed it inappropriate to credit a parent's child support obligation by amounts received by a child derivatively from a parent's Social Security retirement benefits. Mother relies on *Craver v. Craver*, 649 S.W.2d 440 (Mo. banc 1983). In *Craver*, our Supreme Court indeed held that Social Security payments made to a child derivatively through the retirement benefit account of a parent do not constitute "payments" made by the parent and cannot be credited

against a presumed child support obligation. *Id.* at 441.[5] *Craver* thus rejected the notion that a contributor had any real interest in his Social Security retirement benefits warranting treatment of the payment of benefits to a child as payments, effectively, by the contributor. *Id.* at 443.

*Craver* was overruled, however, by the Supreme Court in *Weaks v. Weaks*, 821 S.W.2d 503 (Mo. banc 1991). In *Weaks*, our Supreme Court held that Social Security disability benefits received by mother through father's account should have been credited toward father's child support obligation. *Id. Weaks* held:

> [T]he contributor's legal interest in the fund is not the proper focus of the inquiry. Instead the key fact is that the benefits paid to the children are derived from funds "earned" by the contributor. The person seeking the credit has contributed to the fund through deductions from wages. Since the child receives the benefit payments, the issue of the contributor's property right is irrelevant. The focus should be on whether the purpose of child support, to provide for the needs of a child, is satisfied by receipt of the benefits.

*Id.* at 506. The analysis in *Weaks* has since been consistently followed by Missouri courts. *See Holtgrewe v. Holtgrewe*, 155 S.W.3d 784 (Mo.App. E.D.2005); *Schindler v. Schindler*, 209 S.W.3d 35 (Mo. App. E.D.2006).

*Weaks* is controlling here. Father contributed to Social Security through deductions from his wages. The derivative benefits paid to Child were thus "earned" by Father, notwithstanding that the benefits paid to Child did not otherwise reduce the retirement benefits independently payable to Father. The trial court did not err in crediting Father's child support obligation by the amount derivatively received by Child from Father's Social Security retirement benefits.

Mother argues that *Weaks* only overruled *Craver* with respect to Social Security disability benefits, and that *Craver* is still controlling with respect to Social Security retirement benefits. Mother's argument ignores that there is no material difference between the nature of the Social Security benefits earned by a parent, and that the rationale described in *Weaks* requiring focus on the fact that "the benefits paid to the children are derived from funds 'earned' by the contributor" is of equal application to disability and retirement benefits. *Id.* at 506. Mother's continued reliance on *Craver* is, therefore, misplaced.

Finally, Mother argues that a credit for derivative Social Security benefits received by Child is not expressed as a factor to be considered in calculating child support pursuant to section 210.841.6. Sections 210.841.6 provides that: "In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court shall consider all relevant factors, including," thereafter listing ten enumerated factors addressing, generally, the child's needs, the parents' resources, and other such matters. By predicating its

---

5. *Craver* thus rejected the analysis in *McClaskey v. McClaskey*, 543 S.W.2d 832 (Mo.App. 1976), where the appellate court held that a retired father bound to pay child support was entitled as a matter of law to a credit in the amount of the Social Security benefits his children received through his account. In so holding, the *McClaskey* court reasoned, "The use of social security payments to satisfy a child-support obligation is merely a change in the manner of a payment; the nature of the funds is the same.... Social security benefits are from funds earned in part by the individual who throughout his working life has contributed to the benefits by deductions from his wages," as opposed to gratuities, public assistance or welfare. *Id.* at 834.

enumeration of ten relevant facts with the proviso that "the court shall consider all relevant facts including," the legislature clearly intended its list to be non-exclusive, and anticipated that other relevant facts addressing a child's needs and/or a parent's resources should be considered by a trial court in determining the amount of child support to be paid. Derivative Social Security benefits being received by a child is clearly a relevant fact to be considered under section 210.841.6 in light of these parameters.

Point three is denied.

### Father's Point I

■ For his first point, Father claims that the trial court erred in entering judgment for medical payments and attorney's fees in favor of Mother because in doing so, the trial court violated Father's due process rights in that Father lacked an opportunity to conduct discovery on these late asserted claims for damages, and in that the trial court permitted Mother's late amendment of her petition to specifically plead a right to recover birthing costs and attorney's fees after first denying Mother's request to amend her petition. We disagree.

The trial court specifically advised Father on the morning of trial when Mother sought leave to file her Amended Petition that it did not believe Mother needed to file the Amended Petition to assert a demand for attorney's fees because the trial court believed it had the authority to award such fees in a paternity action whether or not specifically pled. Father has not argued that the trial court's ruling in this regard was legally erroneous.

With respect to Mother's birthing costs, the trial court denied Mother's motion for leave to file the Amended Petition, but expressly advised the parties that:

Well, then I'll let you find that out. So request for [sic] file a First Amended is denied. And when it comes to that issue, I guess you're going to have to check out a book, and if the case law is such that they can be awarded and do not require them [sic] to be specifically pled, then of course I'll take that into consideration in my order.

The trial court thus made it abundantly clear that it intended to later determine whether it was authorized to award Mother her birthing costs whether or not they had been specifically pled. Evidence of the birthing expenses was received by the trial court during trial, albeit subject to Father's objection about the timeliness of Mother's Amended Petition. However, Father's objection to the admission of the birthing cost evidence begged the question whether Mother's ability to recover said expenses was conditioned on her having specifically pled the right to recover the costs in her petition.

At the end of trial, the trial court instructed Mother's counsel to provide the court with research within a week so the trial court could determine whether, "if you don't plead it and it's not in your pleadings, can a court award it," referring to the birthing expenses. The trial court ultimately awarded birthing costs, presumably after considering Mother's timely filed motion to reconsider. The trial court did not commit error in doing so. Section 210.841.3 provides in relevant part that: "The judgment or order [of paternity] may direct the father to pay the reasonable expenses of the mother's pregnancy and confinement." The statute does not impose an obligation on a mother to specifically plead a right to recover these expenses as a condition to their recovery. Section 210.839.6 expressly permits the admission of evidence of birthing costs without foundational evidence if copies of the bills supporting the costs were provided to

the father at least seven days before trial, again without imposing an obligation on a mother to specifically plead the right to recover the expenses.

Father does not argue on appeal that Missouri law required Mother to specifically plead the right to recover either attorney's fees or birthing costs in her petition as a condition to their recovery. Instead, Father summarily argues that his due process rights were somehow violated by the trial court's awarding of these expenses and fees because they were not specifically pled. We are not persuaded. Father's purported lack of awareness of the fact that Mother could be awarded her attorney's fees and birthing costs, whether or not specifically pled, is facially insufficient to support Father's claim that he was deprived of due process when ordered to pay those expenses and fees. Moreover, it is clear from the record that Father had been aware for some time that Mother was claiming her birthing expenses as the expenses were listed in Mother's case management statement, which was submitted thirteen months prior to trial, as an unresolved issue, and as Father deposed Mother on the subject of her birthing expenses.[6] Further, even after time to prepare for argument on appeal, Father has not demonstrated any prejudice with regard to expenses that were awarded that should not have been.

Point one is denied.

## Father's Point II

■ For his second point, Father claims that the trial court misapplied the law in its calculation and award of child support because the Form 14 Directions for Use provide that the amount of child support to be awarded when a court imputes both income and child care expenses to an unemployed recipient cannot exceed the presumed amount calculated when no income or child care expenses are imputed. We disagree.

Father argues that the trial court's award of child support violated Directions, Comments for Use and Examples for Completion of Form No. 14, Line 1: Gross Income Comment H, Caveat ("Caveat"), which provides:

> CAVEAT: If income and, where appropriate, reasonable work-related child-care costs are imputed in calculating the presumed child support amount payable to an unemployed parent entitled to receive support, then the support ordered paid by the parent obligated to pay support shall not exceed the presumed child support amount payable if these items are not imputed.

■ Father submitted at least three Form No. 14's to the trial court for its consideration in calculating child support, all of which failed to comply with the Caveat Father now relies upon to assert trial court error. "[I]nvited error at trial cannot serve an appellant on appeal." *Weber v. Deming*, 292 S.W.3d 914 (Mo.App. W.D. 2009) (where Mother argued for the ordered child support amount, cannot later claim the trial court should have used Form 14 to calculate amount).

Point two is denied.

## Father's Point III

In Father's final point, Father contends that the trial court erred in requiring him to pay attorney's fees to Hessenflow (an attorney who previously represented Mother) because there was no evidence

---

6. Although Mother's deposition was not submitted in the record on appeal, at trial, Mother argued to the trial court that Father had deposed her on the issue of her birthing expense, a factual allegation Father did not deny.

presented at trial regarding the attorney's fees incurred by Mother in connection with her representation by Hessenflow.

This point is without merit. In its judgment, the trial court ordered:

> That [Mother] is responsible for the total amount of reasonable attorney's [fees] in the sum of Two Thousand Eight Hundred Ninety–Six Dollars ($2,896.00) payable to Sandra Grant Hessenflow for services provided to [Mother] during the course of this action.

Mother, not Father, was explicitly ordered to pay Hessenflow's attorney's fees. In a separate paragraph of the Judgment, the trial court ordered: "the Court grants [Mother] an award of one-half of reasonable attorney's fees in the sum of Ten Thousand Nine Hundred Eighty–Seven Dollars and Fifty Cents ($10,987.50) to be paid to Attorney George Kapke.["] Father does not complain on appeal that the trial court had insufficient evidence before it to support this award.

Point three is denied.

### Conclusion

We affirm the trial court's judgment.

All concur.

---

7. George Kapke was Mother's trial attorney and submitted fees in the amount of $21,975.00, half of which is the $10,987.50 ordered to be paid by Father.