[Civ. No. 58060. Second Dist., Div. Four. Jan. 29, 1981.]

In re the Marriage of
CORRINE JOYCE and LEWIS ARGENE DENNEY.
CORRINE JOYCE DENNEY, Appellant, v.
LEWIS ARGENE DENNEY, Respondent.

**COUNSEL**

Baird, Baird, Belgum & Buchanan and Lawrence C. Buchanan for Appellant.

Kennedy & Kennedy and Fred G. Kennedy for Respondent.

OPINION

WOODS, J.—Appellant, Corrine Denney (hereinafter referred to as wife), has appealed from an interlocutory judgment of dissolution of marriage. She raises the following issues on appeal:

1. The court erred in refusing to admit testimony in support of her contention that husband's separate business had been transmuted into community property.

2. The court erred in finding that the Peck Road property was husband's separate property.

3. The court erred in deducting from the value of the family residence the amount of a real estate commission.

4. The finding that a 1972 Dodge automobile was community property is not supported by the evidence.

5. The court erroneously allowed husband credit for social security disability payments made on behalf of the minor children.

6. The court erroneously terminated spousal support.

7. It was error to order that the community pay respondent's attorney's fees.

8. The interlocutory judgment signed by the trial court was incomplete.

Husband and wife began living together in November of 1966. They were married in April of 1969 and separated in September of 1976. At the time of the marriage, husband owned and operated a donut shop. Throughout the marriage, husband suffered from alcoholism which increased in severity, resulting in cirrhosis of the liver. By the time of the parties' separation, wife was fully responsible for the management of the husband's business.

Certain of the issues raised by appellant are difficult of resolution because of the nature of the proceedings in this case. In an effort to resolve the numerous issues in dispute between them, the parties attended eight court hearings between October 20, 1977, and November 3,

1978. Apparently because of the passage of time, the position of the parties, their attorneys and the court on some issues is not consistent throughout the proceedings. Thus, in some instances, it is difficult to tell whether a ruling complained of by wife was in fact made. Nonetheless, we have addressed each of the issues raised by wife.

I

At the beginning of the first hearing, the court recited the following stipulation of fact, which was acknowledged to be acceptable by both parties: "That the donut shop belonged to the husband before marriage; that there was nothing due on it and, therefore, nothing paid on any encumbrances on the shop after marriage;..." Wife's position with respect to the community nature of that business, at trial and on appeal, is that the business increased in value during the time of the marriage, and that the increase is community property. The evidence presented by both husband and wife established that the business was worth no more at the time of separation than at the time of marriage. However, wife contends that during the marriage the business had become valueless and that its increase in value from that point created a community asset.

At the conclusion of evidence presented by wife concerning the nature and extent of her activity in the business, the court concluded that the wife had devoted substantial efforts to the operation of the business. The evidence also established, and the court found, that the family lived off the income from the business, whether either or both parties was operating it, and that although neither drew a salary, they took from the business whatever was needed to support the community.

No evidence was offered concerning an oral transmutation of the property. However, wife offered to testify that, at some point in time, the business became valueless, and that she thereafter built it up.

The trial court knew of no authority for a finding of transmutation where the value of a business fluctuates throughout the time of the marriage but results in no net increase from the date of marriage. The court therefore found the proffered evidence irrelevant and admitted no testimony on that issue.

■ *The law concerning transmutation of a separate business into* community property, as it relates to the facts of this case, is well sum-.

marized in *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 255 [105 Cal.Rptr. 483], where the court stated: "All property owned by a husband prior to marriage, together with the rents, issues and profits arising from the property after marriage, is his separate property. [Citations.] The character of the property is fixed as of the time it is acquired and it is not altered by the occurrence of marriage or by the subsequent use of the property in the marital relationship. [Citations.] However, a husband and wife may change the character of property from separate to community by an oral agreement. [Citations.] No particular formalities are required for an effective agreement. [Citation.] The agreement may be either express or implied. [Citations.] If the wife acquires possession of the property and manages and controls it, this does not in and of itself demonstrate that the husband intended to alter the character of his property. [Citation.] However, the nature of the transaction or the surrounding circumstances may establish the existence of such an intent on the part of the husband. [Citations.] The acts of the parties and their dealings with the property may also establish that they intended a community interest."

Additionally, where a separate property business increases in value during the time of the marriage, the community may share in that portion of the enhanced value and the profits attributable to the spouse's individual skill and ability. (*Beam* v. *Bank of America* (1971) 6 Cal.3d 12, 17 [98 Cal.Rptr. 137, 490 P.2d 257].) In support of her contention that there has been such increase in value in this case, wife cites *In re Marriage of Winn* (1979) 98 Cal.App.3d 363 [159 Cal.Rptr. 554]. In that case, husband was ordered to give to wife a promissory note for $7,500, representing one-half the value of his business, found to be community property. In addressing his objection that the trial court lacked the power to require him to purchase his wife's interest in the community, this court noted that the finding of the community nature of the property was valid. We stated at page 365: "[F]inding that the business and its good will was community property, the trial court acted properly. It was entitled to determine that the value of the business in 1975, when bankruptcy occurred, was zero and that any present value was solely due to the husband's efforts in re-establishing it after the bankruptcy."

In that case, the bankruptcy proceedings established that at a precise time during the marriage the business was valueless. Under those circumstances, this court was unwilling to disturb a trial court's finding of the community nature of the increased value, particularly when that

finding was not challenged on appeal. But *Winn* does not provide support for appellant's position in this case. Her offer of proof was "Petitioner would testify as the manager of the business that it had a negative value." We agree with the trial court that under those circumstances, no community interest in increased value is acquired.

Neither the holding in *Beam* nor the result in *Winn* require the ruling sought here. The *Winn* decision must be limited to its facts; otherwise we can envision lengthy trials consumed by the introduction of exceedingly complex testimony concerning month-to-month fluctuations in the value of an ongoing business. The *Beam* court placed upon trial courts the burden of determining the fair market value of a separate business at the time of marriage and again at the time of separation. It did not anticipate that the trier of fact would be required to track the oscillations in growth or decline of a business throughout the marriage.

■ Therefore, we hold that, under these circumstances, where the value of the husband's separate property business was no greater at the time of separation than at the time of marriage, and where no bankruptcy occurred establishing that the business had a zero value at a precise time and was thereafter rebuilt, the trial court did not err in refusing to admit evidence concerning the decreased value of husband's business during this marriage.

## II

■ Wife next contends that the court erred in finding no community interest in the Peck Road property. The real estate located on Peck Road was purchased by husband in 1959 for the sum of $27,000, payable in installments. Husband made monthly payments of $100 per month on his interest in that real estate from 1959 to 1970. Prior to the parties' marriage and during the time that they lived together, wife paid husband's bills. She wrote checks on his account, including the $100 monthly payment on the real estate, but the checks were signed by husband. At some time during the cohabitation, the parties opened a joint account. Thereafter, the $100 payments were made from that account.

The trial court concluded that payments made between the time of the marriage in April 1969, and the final payment on the real property, some time in 1970, were not made with community funds. It reached this conclusion based on the fact that the husband's donut shop was

located on the Peck Road property. The sum of $100 per month was no more than a reasonable rental for the operation of the business, and was paid as a business expense. Because the business was husband's separate property, the payments were made from gross receipts as a cost of doing business and not from the community.

Appellant cites *In re Marriage of Jafeman, supra*, 29 Cal.App.3d at page 256, for the rule that the community has a *pro tanto* interest in separate property if community funds are used to pay part of the purchase price. While that rule is correct, it does not alter the result in this case where the court made a factual finding that the payments were made not by the community, but by the husband's separate property business. Therefore, no tracing of the community interest in the subject realty is possible, and the court did not err in determining that the Peck Road property was husband's separate property.

### III

Wife contends that the trial court erred in subtracting from her one-half interest in the family home one-half of the cost of a 6 percent real estate broker's commission. Wife cites *In re Marriage of Stratton* (1975) 46 Cal.App.3d 173 [119 Cal.Rptr. 924], for the proposition that deduction of cost of sale is erroneous where there is no indication that husband intended to sell the family residence. Under the facts of this case, we conclude that the court did not err in deducting sale costs from the value.

In November 1976, the parties stipulated, and the court ordered, that the family residence be forthwith listed for immediate sale. On October 28, 1977, the court observed that the home had still not been sold, and ordered the house listed immediately with Century 21 realtors. At that time, the court observed that it was unfortunate for the parties to pay a 6 percent real estate commission, when there was some indication that husband wanted to buy wife's interest in the property. However, the court noted, "If the parties cannot agree on a deal between themselves, that will be 6 percent to the real estate broker."

On February 2, 1978, the house had been listed, but low offers only had been received, and it was not yet sold. On February 27, 1978, the court ordered that if the parties were unable to choose a new listing broker by March 7, the court would appoint one. At that time, the court was informed that husband might be willing to buy the wife's

interest for one-half of $64,000; the wife had refused the offer. The court noted that the parties would save $3,500 in real estate commissions and suggested they try to negotiate, but noted that a realtor would be appointed otherwise.

On April 11, 1978, the parties had reached no agreement as to the value of the property. The court ordered a 30-day listing at $68,000 to determine if any offers at that price would be received. On May 16, 1978, it was reported that the only offer received was $61,500. The court ordered that the value of the real estate was $64,000 less a 6 percent real estate commission to be paid off the top, and awarded wife one-half of the balance.

Wife's contention that the court abused its discretion in. deducting from the value of the property a 6 percent commission borders on the frivolous. The trial court expended months of effort to save the parties the cost of commission. There is no indication in the record that husband could have purchased wife's interest in the property or that any funds were available to cover the cost of her share, other than from the proceeds of sale. The trial court may deduct real estate commissions when making a finding of current market value. "Current market value legitimately includes the current costs of sale of the asset in determining the net value of items distributed to each of the parties." (*In re Marriage of Drivon* (1972) 28 Cal.App.3d 896, 898 [105 Cal.Rptr. 124].) There was no error in the court's ruling.

IV

Wife next contends that the court erred in finding that the 1972 Dodge automobile was a community property asset, contending that no evidence supports the finding. Wife's contention ignores the record. At the hearing on October 20, 1977, wife's counsel stated: "May I offer one more stipulation that may save some time. [¶] We have some disagreement about the value of the '67 Chevrolet truck and the '72 Dodge Charger. I would offer to stipulate, since we are sort of seesawing on opposite directions, that each of the parties could be awarded that automobile presently in his or her possession and that the court may consider that an equal division of the cars."

■ Wife may not stipulate to the community nature of an asset at trial and then on appeal challenge the court's finding based on that

stipulation. (See *Watenpaugh* v. *State Teachers' Retirement* (1959) 51 Cal.2d 675, 680 [336 P.2d 165].)

## V

Wife asserts that the court erred in allowing husband credit for social security disability payments made on his behalf to his minor children. We note at the outset that it is unclear from the record whether such credit was in fact allowed. On October 28, 1977, the court ordered husband to pay $125 per month for the support of each of the parties' three children. In February 1978, the court was informed that child support payments had been paid directly to wife by the federal government in the form of social security disability benefits for those children, payable by virtue of husband's disability. At that time, the court credited husband for two payments of $280 each paid by social security and ordered him to pay the balance himself.

On a later appearance, in September 1978, the court stated that the husband owed $375 per month child support and did not make reference to any credit for sums paid by social security. In November 1978, counsel for wife informed the court that husband had paid no child support payments. Husband's attorney advised that social security was paying more per month than the court had ordered and that husband was on disability. The court made no ruling as to whether or to what extent husband was in arrears in child support payments.

The interlocutory judgment prepared by counsel for husband and executed by the trial court orders that husband pay the total sum of $375 per month child support, and is silent on the issue of credit for any social security disability payments paid to the children.

Nonetheless, we reach and resolve the issue raised by wife, presuming that husband is entitled to such credit, to avoid future litigation on this issue.

■ Civil Code section 4705 provides that wherever the court has ordered a noncustodial parent to pay child support, any payments for the support of such child made pursuant to the Social Security Act and transmitted to the custodial parent each month "shall be credited toward the amount ordered by the court to be paid for that month by the noncustodial parent for the support of the child. . . ."

Wife contends that this code section, although admittedly on point and in support of the granting of credit, is unconstitutional in that it violates the supremacy clause of the United States Constitution and violates the due process rights of the children, in that it deprives them of their independent income without a hearing.

With respect to wife's second argument, we do not agree that the effect of the statute is to take from a child its own property. The purpose of providing social security disability benefits for minor children is to provide support. (*Davis* v. *Richardson* (D.Conn. 1972) 342 F.Supp. 588, affd. 409 U.S. 1069 [34 L.Ed.2d 659, 93 S.Ct. 678]; *Adams* v. *Weinberger* (2d Cir. 1975) 521 F.2d 656 [36 A.L.R.Fed. 157].) The cases cited by wife (*Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942 [126 Cal.Rptr. 805, 544 P.2d 941] and *In re Marriage of Cosgrove* (1972) 27 Cal.App.3d 424 [103 Cal.Rptr. 733]), cite the rule that a parent possessing adequate resources has a duty to support his child, regardless of the child's independent estate. These cases are not on point; here we discuss the respective obligation of a noncustodial parent and the Social Security Administration to provide support for a disabled worker's children. The conclusion that the children are entitled to benefits from the Social Security Administration and that the payment of those benefits discharges the disabled worker's duty to provide support does not result in a taking of property from the children without due process.

Wife's position with respect to the supremacy clause is based on her contention that "a ruling by the court that social security disability benefits for a minor child are to be used for some other purpose, would seriously interfere with the expressed statutory scheme of [the] Social Security Act...." As previously noted, the purpose of providing disability benefits for minor children is to provide support. Therefore, the court's ruling treating such benefits as support does not interfere with the Social Security Act nor does it violate the supremacy clause of the United States Constitution.

## VI

Wife argues that the court abused its discretion in terminating spousal support payments. On October 28, 1977, the court ordered that husband pay to wife the sum of $200 per month spousal support for three months, $150 per month for one year, and $1 per

month for two years thereafter. On February 2, 1978, husband offered testimony to the effect that his wife had moved to Arizona and was living with a Bob Barker. Counsel for wife informed the court that his client would testify that she began living with Bob Barker on December 16, 1977, and was then cohabiting with him, but argued that she had no financial alternative but to cohabit and that therefore spousal support should be ordered continued. Counsel for wife offered to have his client testify that she moved in with Bob Barker as a matter of financial necessity.

The trial court rejected the wife's proffered testimony and ordered that spousal support terminate. The court ordered that husband was responsible for all spousal support up to December 16, 1977, and for no support thereafter.

Prior to January 1, 1977, Civil Code section 4801.5 provided as follows: "Upon the petition of a spouse who has been ordered to pay support under section 4801, the court shall revoke the order for support upon proof that the spouse to whom support had been ordered to be paid is living with a person of the opposite sex and holding himself or herself out as the spouse of the person for a total of 30 days or more, either consecutive or nonconsecutive, although not married to the person...."

In the instant case, the trial court, in rejecting the offer of proof by the wife, stated that the code section (Civ. Code, § 4801.5) provides that: "Where anybody starts living with anybody, they are not entitled to alimony or spousal support. There is just no question about it." The court later observed: "All the law says is if you live with anybody its treated as though it were a marriage for the purpose of spousal support."

It is apparent from the court's statements that it had in mind the statute as it read in 1976. However, Civil Code section 4801.5 was amended in 1976, effective January 1, 1977, to read as follows: "(a) Except as otherwise agreed to by the parties in writing, there shall be a rebuttable presumption, affecting the burden of proof, of decreased need for support if the supported party is cohabiting with a person of the opposite sex. Upon such a finding of changed circumstances, the court may modify the payment of support as provided for in subdivision (a) of section 4801.

"(b) Holding one's self out to be the husband or wife of the person with whom one is cohabiting is not necessary to constitute cohabitation as the term is used in this section...."

The hearing in the instant matter on the issue of cohabitation was held on February 2, 1978, after the effective date of the amendment. It is clear from a reading of the new statute that the Legislature anticipated the presentation of evidence on the issue of decreased need for support. Once the supporting spouse establishes cohabitation, the burden shifts to the supported spouse to overcome the presumption that her need for support has decreased. (*In re Marriage of Leib* (1978) 80 Cal.App.3d 629, 635 [145 Cal.Rptr. 763].) Because of the court's apparent unawareness of the modification of the statute in this case, the supported spouse was provided with no such opportunity. This is clearly error and thus this matter must be remanded for further hearing on this issue.

We note that the evidence proffered by both parties, had it been accepted by the trial court, would probably have justified the termination of spousal support in this case. Nonetheless, it is possible that additional evidence might have been presented by the wife had she been allowed to testify.

This matter must be remanded to the trial court with directions to hold a hearing on the issue of termination of spousal support pursuant to Civil Code section 4801.5.

## VII

Wife next contends that the trial court erred in awarding attorney's fees to husband. The contention of error in this respect is twofold. First, wife states that husband failed to request attorney's fees in his responsive pleadings. Second, wife states that the award of $500 attorney's fees in the Arizona action was a punitive measure on the part of the court. We address these contentions separately.

■ With respect to the first issue, the court ordered that the sum of $3,000 be paid to wife's attorneys and the sum of $1,500 to husband's attorneys from the community property. The court ordered that the fees be paid from the sale of the family residence, prior to distribution of the net proceeds to the parties. Although the husband did not request an

award of attorney's fees in his response, in his trial brief he seeks payment of fees for his attorneys. To the extent that that request constituted an amendment of the pleadings, no objection to such an informal amendment was raised by wife.

◼ Wife also argues that an award of attorney's fees must be based on a demonstration of need and that the evidence does not support the award in this case. We disagree. The evidence established that wife had no employment prospects when she and husband separated and she ceased working at the donut shop. The evidence made clear that husband's ability to work was unreliable, that he was often working only part time or not at all, and that he was frequently on disability. It is clear that both parties established a need for the payment of attorney's fees out of community assets. (See *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 898 [101 Cal.Rptr. 295].)

With respect to the Arizona action, the court was informed in April 1978 that wife had brought an action in Arizona to prohibit removal by husband of the parties' children from the State of Arizona. The court noted that this issue should have been, but was not, raised in the California action and that the Arizona lawsuit compelled husband to expend additional sums in attorney's fees to defend that action there.

In September 1978, counsel for husband informed the court that he had expended services of a reasonable value of $500 in defending the Arizona action. The court then ordered that those fees be paid by the community, from the sale of the family residence.

We find nothing in the record to reflect that the court was punishing wife by the imposition of those fees. Although the court expressed displeasure at the institution of the foreign action, the basis for the granting of fees was the court's conclusion that the fees were necessarily and reasonably incurred in the defense of the action, which need not have been brought. There was no error in the award of attorney's fees in this matter.

## VIII

Finally, wife contends that the interlocutory judgment executed by the court was incomplete in that it did not specify a deadline by which husband was to pay to wife sums in satisfaction of community property division. At the last hearing in this matter, November

3, 1978, the court instructed counsel for husband to include in the interlocutory decree a February 1, 1979, deadline for payment and distribution. The interlocutory decree provides no such date. The requested deadline having passed, this issue now appears moot. If husband fails to distribute property to wife under the court order, wife has recourse in the superior court, which retained jurisdiction over all issues in the case.

The judgment is reversed and remanded for the limited purpose of providing to wife a hearing under Civil Code section 4801.5 on the issue of spousal support. In all other respects, the judgment is affirmed.

Kingsley, Acting P. J. and McClosky, J., concurred.