**Roger L. PONTBRIAND**

v.

**Virginia May PONTBRIAND.**

**No. 91–517–M.P.**

Supreme Court of Rhode Island.

March 29, 1993.

Brenda Coville Harrigan, Gunning, LaFazia & Gnys, Providence, for plaintiff.

David Strachman, Lipsey & Skolnik, Providence, for defendant.

## OPINION

SHEA, Justice.

The plaintiff, Roger L. Pontbriand (Roger), and the defendant, Virginia May Pontbriand (Virginia), were divorced by final decree on November 16, 1990. The plaintiff has petitioned this court for the issuance of a writ of certiorari to review the trial master's failure to give the plaintiff a dollar-for-dollar credit against his child-support obligation for payments received by his children from Social Security through their representative and the trial master's failure to consider the children's receipt of dependency benefits from Social Security in the calculation of the husband's child-support obligation. The plaintiff also appeals from the trial master's adjudging him in willful contempt. We quash the judgment regarding the change in the child support, and we sustain the appeal from the finding of contempt.

Pursuant to a final divorce decree Roger was required to pay Virginia the sum of $575 per month as child support. This figure derived from the child-support-guideline worksheet, was based upon Roger's monthly gross income of $2,000. At the time of the divorce his monthly gross income consisted of medical benefits that he received from the Teachers Insurance and Annuity Association College Retirement Equities Fund (TIAA/CREF) as a result of his disability retirement from the Rhode Island School of Design in March 1990. Roger's monthly income was determined by calculating 60 percent of his wage base versus the total sum of benefits received from other sources. Under the TIAA/CREF plan benefits from other sources include moneys paid to either plaintiff himself or to his codependents. Thus Roger's monthly benefits from TIAA/CREF would be reduced by the amount of any monthly Social Security benefits that either he or his children received.

Commencing December 1990, Roger and his dependents were entitled to receive Social Security benefits. The monthly total was $1,488.40. Of that total amount $992.30 was payable directly to plaintiff, and $496.10 was payable directly to defendant as the children's representative. On November 23, 1990, TIAA/CREF notified plaintiff that since he was receiving Social Security benefits, his monthly TIAA/CREF payments would be reduced by the total amount that he and his dependents were receiving in Social Security benefits ($1,488.40). The plaintiff's monthly benefit from TIAA/CREF was recalculated at $745.46 per month.

Roger, without leave of court, began making child-support payments of only $79 per month ($575 minus the $496 that his children were receiving directly from Social Security). Under this formulation the children would still receive the required $575 but now from two sources. In addition he filed a motion to modify the child-support order on December 13, 1990, to reflect the change in the source of his total income. On January 4, 1991, Virginia filed a motion to adjudge Roger in contempt for paying only $79 rather than the $575 ordered.

At the subsequent hearing on June 3, 1991, the trial master ruled that Roger erred in making a dollar-for-dollar reduction of his child-support payments based upon what his children received from Social Security on his behalf. Since Roger unilaterally reduced his support payments, the master found him in contempt of the divorce decree. The trial master did consider his motion to modify support based on his reduction in income and reduced his support obligation to $454 per month.

The benefits received by the children were not considered in this modification. As a result of the deduction in Roger's gross income, a new child-support calculation was made. Consequently Roger's individual child-support obligation was reduced to $454 per month. Under this modification the dependent children would now receive both the $454 per month from Roger

and the $496-per-month benefit from Social Security, for a total of $950 per month. Thus the children would be allowed $375 more per month than the original support order of $575 per month without any showing of increased need.

Roger asserted first that he should be allowed a direct credit of $496 per month toward his child-support obligation for the money that the children receive from Social Security on his behalf. Under this reasoning, he argues, he should only be required to pay $79 per month for the difference between the child-support order and the Social Security benefit. In the alternative he requested that the support order be modified to reflect his decrease in gross income *and* the increase in funds available to the children from Social Security. The modification he seeks would require him under a new order to pay only the $79.

### I

██ We first address plaintiff's request for a direct credit. The allowance of a credit for Social Security payments has not been raised previously in Rhode Island. We shall therefore look to the experience of the states that have considered the question.[1]

The overwhelming majority of states that have considered this issue allow a credit for Social Security benefits paid to dependent children. *Windham v. State,* 574 So.2d 853 (Ala.Civ.App.1990) (citing *Binns v. Maddox,* 57 Ala.App. 230, 327 So.2d 726 (1976)); *Cash v. Cash,* 234 Ark. 603, 353 S.W.2d 348 (1962); *Lopez v. Lopez,* 125 Ariz. 309, 609 P.2d 579 (Ct.App. 1980); *In re Marriage of Denny,* 115 Cal. App.3d 543, 171 Cal.Rptr. 440 (1981); *Perteet v. Sumner,* 246 Ga. 182, 269 S.E.2d 453 (1980) (citing *Horton v. Horton,* 219 Ga. 177, 132 S.E.2d 200 (1963)); *Newman v. Newman,* 451 N.W.2d 843 (Iowa 1990) (citing *Potts v. Potts,* 240 N.W.2d 680 (Iowa 1976)); *Childerson v. Hess,* 198 Ill. App.3d 395, 144 Ill.Dec. 551, 555 N.E.2d 1070 (1990); *Poynter v. Poynter,* 590

---

1. *See also* Annot., *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child,* 77 A.L.R.3d 1315 (1977 & 1992 Supp.).

N.E.2d 150 (Ind.Ct.App.1992); *Andler v. Andler,* 217 Kan. 538, 538 P.2d 649 (1975); *McCloud v. McCloud,* 544 So.2d 764 (La.Ct. App.1989) (citing *Folds v. Lebert,* 420 So.2d 715 (La.Ct.App.1982)); *Frens v. Frens,* 191 Mich.App. 654, 478 N.W.2d 750 (1991); *Mooneyham v. Mooneyham,* 420 So.2d 1072 (Miss.1982); *Weaks v. Weaks,* 821 S.W.2d 503 (Mo.1991); *Hanthorn v. Hanthorn,* 236 Neb. 225, 460 N.W.2d 650 (1990) (citing *Schulze v. Jensen,* 191 Neb. 253, 214 N.W.2d 591 (1974)); *Griffin v. Avery,* 120 N.H. 783, 424 A.2d 175 (1980); *Romero v. Romero,* 101 N.M. 345, 682 P.2d 201 (Ct. App.1984); *Guthmiller v. Guthmiller,* 448 N.W.2d 643 (N.D.1989); *Davis v. Davis,* 141 Vt. 398, 449 A.2d 947 (1982).

In addition several states have extended this same principle to Social Security benefits paid to children as survivor's benefits. *Bowden v. Bowden,* 426 So.2d 448 (Ala.Civ. App.1983) (applying North Carolina law); *In re Marriage of Meek,* 669 P.2d 628 (Colo.Ct.App.1983); *Board v. Board,* 690 S.W.2d 380 (Ky.1985); *Cohen v. Murphy,* 368 Mass. 144, 330 N.E.2d 473 (1975). In these states, direct credit is given to the decedent's estate for death benefits payable to the surviving children.

We shall adopt the rationale of the majority of the states and allow the child-support obligations of a noncustodial spouse to be offset by the Social Security benefits paid to dependent children on behalf of that parent. The rationale for allowing a credit is perhaps best stated by a recent Indiana decision on the issue. "The rationale is that the social security benefits are not gratuities but are earned, and they substitute for lost earning power because of the disability." *Poynter v. Poynter,* 590 N.E.2d at 152. Similarly the Vermont court recognized that equitable considerations require that a credit be given when it stated that:

"[E]quity and fairness demand that consideration be given to government child support benefits paid to the party having custody. These payments are, in a sense, a substitute for wages the obligor would have received but for the disability, and from which the court ordered payments would otherwise have been made. * * * In theory, at least, the actual *source* of payments is of no concern to the party having custody as long as they are in fact made." *Davis v. Davis,* 141 Vt. at 401, 449 A.2d at 948.

The Missouri court rejected its previous determination in *Craver v. Craver,* 649 S.W.2d 440 (Mo.1983), which disallowed the credit, in favor of the majority view. *Weaks v. Weaks,* 821 S.W.2d 503 (Mo.1991). In reviewing the proper focus of the inquiry, the *Weaks* court explained that "the key fact is that the benefits paid to the children are derived from funds 'earned' by the contributer." *Id.* at 506. "The focus of the inquiry should be whether the purpose of child support is satisfied by the receipt of the social security benefits." *Id.* (citing *Horton v. Horton,* 219 Ga. 177, 132 S.E.2d at 201; *Potts v. Potts,* 240 N.W.2d at 681). Since Social Security benefits are specifically provided to replace lost income, it would be "inequitable to withhold a credit against the child support obligation." *Weaks,* 821 S.W.2d at 506.

The Missouri court in *Weaks* went even further and pronounced that the minority rule requiring the petitioner to seek a modification in order to get a credit "is harsh and unjust." *Id.*

"In situations involving disability benefits, the party seeking credit most likely faces a reduction of income, financial uncertainty, physical or mental impairment and other attendant consequences of the disability. The additional burden of petitioning the court for a modification typically wastes time and money and helps no one." *Id.* at 506–07.

Direct credit should be given to the noncustodial spouse, when the receipt of Social Security benefits is "merely a change in the identity of the payer." *Id.* at 507 (citing *Board v. Board,* 690 S.W.2d at 381).

■ In the present case the Pontbriand children were entitled to receive benefits from Social Security because of the earned contributions made by the father. The benefits received were paid because of their father's disability. His pension was reduced to account for this additional in-

come from Social Security and intended to substitute for a portion of his pension income. To ignore the fact that Roger's income from TIAA/CREF was reduced to reflect dependency benefits paid to him and his children would be inequitable. Roger's income base did not change, but rather the source. Following the line of cases recognizing that the Social Security benefits paid to the children are a substitute for earned income, we must give Roger credit toward his child0-support obligation for the Social Security benefits paid.

■ In a minority of states the allowance of a credit has been limited by requiring the petitioner to seek a modification from the court. The Social Security benefit to the children may be considered a change in circumstance that warrants a modification. *In re Estate of Patterson*, 167 Ariz. 168, 805 P.2d 401 (1991); *Arnoldt v. Arnoldt*, 147 Misc.2d 37, 554 N.Y.S.2d 396 (1990); *Children Youth & Services v. Chorgo*, 341 Pa.Super. 512, 491 A.2d 1374 (1985); *Chase v. Chase*, 74 Wash.2d 253, 444 P.2d 145 (1968); *Farley v. Farley*, 186 W.Va. 263, 412 S.E.2d 261 (1991); *Hinckley v. Hinckley*, 812 P.2d 907 (Wyo.1991). We decline to follow the states that require a petitioner to seek a modification for a reduction in child-support payments when Social Security benefits are available to the dependent children. Instead of seeking a formal modification from the Family Court that considers the Social Security benefit, we require a noncustodial parent to inform the Family Court, that the source of income has changed and that a credit will be taken. "There is a distinction between crediting an obligation with payment made from another source and increasing, decreasing or terminating, or otherwise modifying a specific dollar amount." *Board v. Board*, 690 S.W.2d at 381. A child-support obligor may reduce or suspend payments for support of the children only after petitioning the Family Court. *Grissom v. Pawtucket Trust Co.*, 559 A.2d 1065 (R.I.1989).

In this case Roger is not seeking a reduction or suspension of the payments but rather a credit for the change in source of payments. No modification is necessary. The Family Court and custodial spouse need only be notified that the support order is being met through different sources.

## II

■ In light of this finding plaintiff's alternative argument that the trial justice erred in failing to consider the additional income that the children were receiving through Social Security is no longer the focus of our inquiry. We have held repeatedly that an order modifying a child-support decree will not be disturbed unless that order is based on findings that are clearly wrong. *Meehan v. Meehan*, 603 A.2d 333 (R.I.1992). Our conclusion that a direct credit should have been granted warrants a finding here that the trial master's modification of the support order, considering only Roger's decreased income without any showing of additional need for the children, was clearly wrong.

## III

■ We now move to the issue of contempt. A party who disregards a valid court order in favor of his own notion of justice should be adjudged in contempt. "A contempt order * * * relates to the power of the Family Court to vindicate the authority of its decrees by coercing a respondent into obedience thereto." *Lippman v. Kay*, 415 A.2d 738, 742 (R.I. 1980). In these contempt proceedings a respondent can raise the question of his lack of willfulness and his inability to pay. *Id.* (citing *Brown v. Brown*, 114 R.I. 117, 120, 329 A.2d 200, 201 (1974)). Whether a party is willful in his disobedience is a question of fact. *Borozny v. Paine*, 122 R.I. 701, 707, 411 A.2d 304, 307 (1980).

■ In reviewing an adjudgment of contempt, the decision of the trial justice is given great deference and will not be disturbed absent a clear abuse. *Williams v. Williams*, 429 A.2d 450, 454 (R.I.1981). In this case we conclude that the trial master erred in finding contempt. By reducing his payments to $79, on advice of counsel, to account for the difference between the So-

cial Security benefits and the support order, Roger did not demonstrate any willful disregard for the court's order. In fact it appears that he went out of his way to ensure that the exact dollar amount to which his children were entitled was met.

For these reasons the plaintiff's appeal from the contempt order is sustained, and that judgment is vacated. The petition for certiorari is granted, and the order modifying the child support is quashed. The papers of the case are remanded to the Family Court with our decision endorsed thereon.