Filed 7/17/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| Y.H., | D071859 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. DN125635) |
| M.H., | |
| Defendant and Respondent; | |
| SAN DIEGO COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | |
| Intervener and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County,

Adam Wertheimer, Commissioner.  Affirmed as modified.

Xavier Beccera, Attorney General, Julie Weng-Gutierrez, Senior Assistant

Attorney General, and Linda M. Gonzalez and Marina L. Soto, Deputy Attorneys General

for Intervener and Appellant.

Doppelt & Forney, Damon B. Forney; Feuerstein, Murphy & Beals, Bruce M.

Beals; and Debra Deck Scott for Defendant and Respondent.

No appearance for Plaintiff and Respondent.

This appeal presents an issue of first impression in California. M.H. (Father), a child-support obligor, became disabled and applied for Social Security Disability Insurance (SSDI) for himself and his daughter. Family Code section 4504, subdivision (b) requires derivative benefits received by the child of a disabled parent to be credited against a noncustodial obligor's child support.[1] In this case, the Social Security Administration (SSA) took *six years* to approve Father's application. In 2015, it made a lump-sum payment for past-due derivative benefits to custodial parent Y.H. (Mother), as Daughter's representative payee. In the intervening six years, Father had continued to pay child support and was not in arrears. Does section 4504, subdivision (b) permit retroactive child support credit from Daughter's lump-sum payment where there is no child support arrearage? The trial court determined it does, and we agree. We modify the order solely to correct a clerical error and, as so modified, affirm.[2]

---

[1] Further statutory references are to the Family Code.

[2] We use the term "credit" throughout this opinion to refer to the *attribution* of Daughter's lump-sum payment to Father's past child support obligation. At this point in time we express no view as to whether this attribution should take the form of an *offset* against future child support obligations or a *refund* of excess child support paid. The trial court did not order an offset or refund and limited its ruling to whether credit could be applied in some manner. We follow the same approach, leaving it to the parties and the trial court to determine in future proceedings exactly *how* Father's credit will be effected.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother married in 2001, separated a year later, and divorced in 2003. Their only child, Daughter, was born in 2002. Pursuant to the stipulated marital settlement agreement, Mother had sole physical custody, the parents shared joint legal custody, and Father agreed to pay guideline child support.

Father was honorably discharged from the United States Marine Corps in 2004 and was found permanently disabled as a result of injuries sustained in combat in Iraq. At some point, Father began to receive Department of Veteran Affairs (VA) disability benefits.

Father's child support obligation changed over the years. At Mother's request, San Diego County Department of Child Support Services (DCSS) intervened in February 2006 to provide child support enforcement services.[3] Effective March 2007, Father's obligation was $359 per month.

In 2011, DCSS filed a motion to modify child support. Both parents submitted income and expense declarations. Father was living solely on VA disability benefits of $2,870 per month. Mother was unemployed and finishing her last year of a bachelor's degree. Effective September 1, 2012, Father's child support obligation was increased to $719 per month.

---

[3]     Mother was at some point receiving public assistance. However, by the time of the hearing on the pertinent request for order, all child support payments by Father were going directly to Mother.

Meanwhile, Father had applied for SSDI for himself and derivative benefits for his daughter. (42 U.S.C. §§ 402, subd. (d), 423, subd. (a).) After six years, his application was finally approved on June 29, 2015. The SSA determined that Father was entitled to benefits starting June 1, 2009. He was to receive $1,088 per month plus a lump-sum payment of $78,057 reflecting past due benefits that accrued while his application was pending. The SSA withheld $19,514 of that lump-sum payment for attorney's fees, and Father received a check for $61,121.65.

At roughly the same time, the SSA notified Mother that she had been chosen as the representative payee for Daughter's derivative benefits. (20 C.F.R. §§ 404.2001, subd. (b)(2), 404.2021, subd. (c)(1).) Due to Father's disability, Daughter was entitled to receive derivative benefits of $596 per month beginning July 2015. The SSA also sent Mother a lump-sum check for $41,384 reflecting past-due benefits that accrued while Father's application was pending.

For some months, Mother received Daughter's derivative benefits without notifying DCSS, resulting in Father overpaying child support. During this period, the SSA was withholding $544 from Father's monthly SSDI benefits. At some point DCSS started crediting Daughter's monthly benefit of $596 against Father's monthly support obligation of $719. Starting in March 2016, DCSS withheld $123 per month from Father's SSDI for the balance and credited Father for his overpayments during the previous nine months.

Father filed a request for order seeking (1) an audit by DCSS of all child support payments made to Mother, and (2) credit for Daughter's lump-sum derivative benefit

4

payment. At the time he filed his motion, Father did not know how much Daughter had received as a lump sum or the amount of her monthly derivative benefit. Father sought discovery from Mother and filed a motion to compel when she failed to respond. He later obtained the information by issuing a subpoena to the SSA.

The court heard argument on Father's request for order and motion to compel in December 2016. Mother received notice but did not appear. Because Father had obtained the information needed for his motion, the court denied his motion to compel but imposed a $2,500 discovery sanction on Mother.

Although it had not filed a brief, DCSS asked to be heard on Father's request for order. It argued (as it does on appeal) that the lump-sum payment Mother received in July 2015 could only be credited under section 4504, subdivision (b) toward that month's child support obligation and then to any arrears. Because Father had paid his child support obligation in full, and in fact had a credit balance at the time of the hearing, he had no arrears to which the lump sum could be credited.

DCSS acknowledged that California law required it to reimburse any overpayment of child support. It also admitted that if Father had *failed* to pay child support during the six years he waited for the SSA to approve his disability benefits, it would have filed an enforcement action. But because Father had paid his child support, he was not in arrears and, according to DCSS, not entitled to credit for the lump-sum derivative benefit payment received by Mother. DCSS claimed this interpretation followed a plain reading of section 4504, subdivision (b) and Code of Civil Procedure section 695.221.

5

The trial court rejected DCSS's argument and granted Father's motion. It placed great weight on the "shall be credited" language in section 4504, subdivision (b) and explained that the statute *mandated* credit against Father's child support obligation. It further noted that as a result of flaws in the SSA's system, a person often waited years for a benefit claim to be approved. When Mother finally received Daughter's past-due derivative benefits in the form of a lump-sum payment, that payment had to be retroactively credited under section 4504 for all the intervening months Daughter received such benefits.

Father's counsel erroneously stated that Daughter's monthly derivative benefit had remained constant at $596 since June 2009. On that basis, the court ordered DCSS to retroactively apply $596 toward Father's monthly child support obligation commencing June 2009. It ordered Daughter's derivative benefits to be applied *first* against Father's child support obligation before applying any voluntary payments made by Father. Any excess would be subject to an offset or refund. The court rejected DCSS's contention that this was the "functional equivalent" of ordering reimbursement of Daughter's derivative benefits.

DCSS requested a statement of decision, which was not filed until after DCSS filed a notice of appeal. On July 19, 2017, we denied Father's motion to augment the record with the statement of decision and related filings.

DISCUSSION

The thrust of DCSS's argument is that section 4504, subdivision (b) prohibits applying retroactive credit for past-due derivative benefits when a noncustodial obligor

6

parent is current in child support and owes no arrears. Because this presents a purely legal issue on undisputed facts, we apply the de novo standard of review. (*In re Marriage of Hall and Frencher* (2016) 247 Cal.App.4th 23, 26.) " ' "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent." ' " " 'Where the language of the statute is clear and unambiguous, we follow the plain meaning of the statute and need not examine other indicia of legislative intent.' " "Where appropriate, we turn to legislative history as an extrinsic aid to evaluate legislative intent." (*N.S. v. D.M.* (2018) 21 Cal.App.5th 1040, 1047, citations omitted.)[4]

A

Federal law provides for two types of Social Security insurance benefits—old age benefits and disability benefits. (*Elsenheimer v. Elsenheimer* (2004) 124 Cal.App.4th 1532, 1538.) Father received benefits under the Social Security Disability Insurance Program. (42 U.S.C. § 423, subd. (a).)[5] A child not living in the same household as the disabled person may receive *derivative* benefits on account of a parent's disability. (42 U.S.C. § 402, subd. (d).) If a beneficiary is under the age of 18, the SSA will generally

---

4    DCSS's interpretation of section 4504 is not binding. "Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7−8.)

5    "[D]isabled persons are entitled to benefits under two distinct programs administered by the Social Security Administration." (*In re S.M.* (2012) 209 Cal.App.4th 21, 28.) Social Security Disability Insurance (SSDI) provides benefits to disabled persons and their dependents who have paid premiums to the insurance program through payroll deductions. (*Ibid.*) By contrast, Supplemental Security Income (SSI) provides benefits to indigent persons who are elderly, blind, or disabled. (*Id.* at pp. 28−29.)

pay benefits to a representative payee, preferably the custodial parent. (20 C.F.R. §§ 404.2001, subd. (b)(2), 404.2021, subd. (c)(1).) Mother received Daughter's derivative benefits as her representative payee.

A child's Social Security insurance benefits are primarily intended for the support of a child. (20 C.F.R. § 404.2040, subd. (a)(1); *In re Marriage of Denny* (1981) 115 Cal.App.3d 543, 554.) State law requires such benefits to be applied as a credit to a noncustodial parent's child support obligation. Section 4504, subdivision (b) provides:

> "If the court has ordered a noncustodial parent to pay for the support of a child, payments for the support of the child made by the federal government pursuant to the Social Security Act . . . because of the retirement or disability of the noncustodial parent and received by the custodial parent or other child support obligee shall be credited toward the amount ordered by the court to be paid by the noncustodial parent for support of the child unless the payments made by the federal government were taken into consideration by the court in determining the amount of support to be paid. Any payments shall be credited in the order set forth in Section 695.221 of the Code of Civil Procedure."

The facts here are not in dispute. The SSA took six years to approve Father's 2009 request for Social Security disability benefits. Father continued to pay child support while his application was pending. As a result, when the SSA sent Mother a lump-sum payment for six years of past-due derivative benefits in July 2015, Father was not in arrears. DCSS argues that because he was not in arrears, there was nothing to credit Daughter's lump-sum derivative benefit *to*. It points to Code of Civil Procedure section 695.221, which specifies the order in which credit must be applied:

> "Satisfaction of a money judgment for support shall be credited as follows: [¶] (a) The money shall first be credited against the current month's support. [¶] (b) Any remaining money shall next be

8

credited against the principal amount of the judgment remaining unsatisfied. If the judgment is payable in installments, the remaining money shall be credited against the matured installments in the order in which they matured. [¶] (c) Any remaining money shall be credited against the accrued interest that remains unsatisfied."

The parties have not cited, nor have we found, any California authorities addressing this scenario. As we explain, we agree with the trial court that a retroactive credit is permitted under section 4504 notwithstanding Father's lack of arrears. As the court reasoned, the plain language of section 4504 states that a child's derivative benefits "shall be credited" toward a noncustodial parent's child support obligation. (§ 4504, subd. (b).)[6] The statute requires credit to be applied in a specific order—first to the current month's support, then to arrears (principal first, then accrued interest). (Code Civ. Proc., § 695.221.) But this payment schedule does not *limit* the statutory mandate to credit a child's derivative benefits toward a noncustodial parent's child support obligation, nor does it specify *how* to apply the remainder of the credit if the arrears (if any) are insufficient to exhaust the entire amount.

Daughter became entitled to benefits on June 1, 2009, at the same time as Father. In July 2015, Mother received a check for $41,384 reflecting a lump-sum payment for past-due monthly derivative benefits between June 2009 and June 2015 *and* a payment of

---

[6] An exception, not applicable here, arises when "the payments made by the federal government were taken into consideration by the court in determining the amount of support to be paid." (§ 4504, subd. (b).)

9

$596 for the month of July 2015.[7]  Under a plain reading of section 4504, the court had to apply the July benefit of $596 against Father's "current month's support [obligation]" of $719.  (Code Civ. Proc., § 695.221, subd. (a).)  DCSS agrees up to this point.  Yet it disagrees with the next logical step.  There being no arrears, the court had to find a different way to satisfy the mandate that "payments for the support of the child made by the federal government . . . shall be credited" toward Father's child support obligation.  (§ 4504, subd. (b).)  Any other reading would impose a nonexistent limitation on the "shall be credited" language of section 4504.

Father's payments during the six years he waited for SSA's approval were essentially an *advance* of his support obligation.  Once Daughter's derivative benefits were approved and paid, the statute required a credit against Father's obligation.  (§ 4504, subd. (b).)  The court met the statutory mandate by ordering retroactive child support credit for the months covered by the lump-sum payment for past-due benefits.  This fell within its broad enforcement power to determine the manner in which its child support order is enforced.  (§ 290.)  "[T]he trial court may give credit for past overpayment (*In re Marriage of Peet* (1978) 84 Cal.App.3d 974, 980−981)" . . .  "or take into consideration 'whether the debtor had satisfied or otherwise discharged the obligation imposed by the

----

7    The SSA's July 2015 letter to Mother contains a typographical error.  It states that the $41,384 lump sum payment covers derivative benefits between June 2009 and *June* 2015.  Elsewhere, the letter breaks down benefits by year.  Subtracting benefits paid from 2009 to 2014 from the lump sum shows that $4,172 is attributable to the 2015 partial year.  Dividing this figure by the $596 monthly rate in effect for 2015 reveals that the lump sum covers *seven* months of 2015—i.e., in total, June 2009 through *July* 2015.  This is further corroborated by the SSA's ledger showing the lump sum payment followed by payments for August through December in 2015.

original order.' " (*Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 858−859.)  That is precisely what the court did.

B

To the extent the statutory language is ambiguous, we turn to the legislative history.  The parties agree on the legislative history but disagree as to its import.  As we explain, Father is correct that the legislative history supports the application of retroactive credit from Daughter's lump-sum payment.

Previously, section 4504, subdivision (b) provided:

> "If the court has ordered a noncustodial parent to pay for the support of a child, payments for the support of the child made by the federal government pursuant to the Social Security Act . . . because of the retirement or disability of the noncustodial parent and received by the custodial parent or other child support obligee each month shall be credited toward the amount ordered by the court to be paid for that month by the noncustodial parent for support of the child unless the payments made by the federal government were taken into consideration by the court in determining the amount of support to be paid.  If a lump-sum payment which represents payments for more than one month is received by the custodial parent or other child support obligee, credit shall be given for each month for which the lump sum payment was made."

(Former § 4504, Stats. 1996, ch. 912, § 2.)  In other words, the statute required payments received "each month" to be credited toward the child support obligation "for that month."  (*Ibid.*)  Although the statute allowed credit for a lump-sum benefit to the extent the obligor owed support for the months represented by the benefit payment, it did not allow credit to be applied to other arrears.  Accordingly, *In re Marriage of Robinson* (1998) 65 Cal.App.4th 93 affirmed an order denying credit against arrears because of the "directive that Social Security payments be credited against the amount 'to be paid for

11

that month.' " (*Id.* at p. 96.) It reasoned that the statute did not "authorize payments to be credited to amounts due in prior months, nor to accrued interest on those arrearages." (*Ibid.*)

In 2004, the Legislature amended section 4504 and broadened how federal disability benefits could be credited toward an obligor's child support. (Stats. 2004, ch. 305, § 4, p. 3234.) DCSS sponsored the bill to implement recommendations of a legislatively mandated "Collectability Study" and "relieve the child support arrears crisis in California." (Sen. Com. on Judiciary, Analysis of A.B. No. 2669 (2003−2004 Reg. Sess.) as amended Jun. 16, 2004, p. 1.) The 2004 amendment sought to "prevent non-custodial parents from becoming discouraged and disappearing from their children's lives completely" because they could not service their debt. (Assem. Com. on Judiciary, Analysis of A.B. No. 2669 (2003−2004 Reg. Sess.) as amended Mar. 25, 2004, p. 3.)

Whereas the statute previously required credit "toward the amount ordered by the court *to be paid for that month*," the amended statute simply requires credit "toward the amount ordered by the court *to be paid*." (Compare § 4504, former subd. (b), Stats. 1996, ch. 912, § 2 with § 4504, subd. (b); Italics added.) This change eliminated the need for the last sentence, about how to apply "a lump-sum payment which represents payments for more than one month." As the Senate Judiciary Committee report states, the 2004 amendment was designed to "credit the noncustodial parent for the full amount of the dependent's benefits received, regardless of the time period the benefits represent." (Sen. Com. on Judiciary, Analysis of A.B. No. 2669 (2003−2004 Reg. Sess.) as amended Jun. 16, 2004, p. 5.)

12

The 2004 amendment incorporated Code of Civil Procedure section 695.221 to further clarify that excess credit could be applied toward child support *arrears*. (*In re Marriage of Hall and Frencher, supra,* 247 Cal.App.4th at p. 27 [distinguishing *In re Marriage of Robinson, supra,* 65 Cal.App.4th 93 based on the amendment].) As noted, that statute in turn requires credit to be applied first against the current month's support obligation and then against "unsatisfied" principal and interest. (Code Civ. Proc., § 695.221, subds. (b)–(c).) DCSS claims the word "unsatisfied" shows that credit may be applied only to the current month and to *arrears*, not to past child support payments that were made in full. But neither the plain language nor the legislative history supports that view. We agree with Father that "the aim of the legislature was to broaden how a lump-sum payment could be credited to a noncustodial parent's child support obligation, not narrow it." (Compare *In re Marriage of Hall and Frencher, supra,* at p. 27 [Social Security payments could be applied to arrears owed before the start date of those payments] with *In re Marriage of Robinson, supra,* at p. 96 [rejecting application to arrears].)

In interpreting a statute, we must bear in mind the statutory purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Commission* (1987) 43 Cal.3d 1379, 1387.) "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." (*Ibid.*) Child support proceedings focus on the best interests of the child. (§ 4053, subd. (e); see *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 451.) Several state and federal laws encourage the timely and consistent payment of child support. (See § 290 [permitting enforcement "by execution, the appointment of a

13

receiver, or contempt" or other means]; *Moss v. Superior Court* (1998) 17 Cal.4th 396 [contempt sanctions]; § 5230, subd. (a) [earnings assignment orders]; Code Civ. Proc., §§ 685.010, 685.020 [interest on arrears]; Assem. Com. on Judiciary, Analysis of A.B. No. 2669 (2003−2004 Reg. Sess.) as amended Mar. 25, 2004, p. 3 [charging interest furthers the mission to "focus non-custodial parents on the importance of paying their child support debt as compared to other debts they might owe"]; Pen. Code, § 270 [criminal penalties]; 18 U.S.C. § 228 [criminal penalties as to out-of-state child]; see also 42 U.S.C. § 652, subd. (k)(2) [passport denial or revocation]; § 17520, subds. (b) & (e) [state license denial or revocation].)

DCSS's interpretation would lead to the perverse consequence of encouraging arrears by an obligor who has applied for federal benefits. Courts in other states have rejected interpretations similar to the one offered by DCSS for this very reason:

> "If we were to limit a payor's credit entitlement to only situations of 'unpaid support,' we would encourage disabled payors who nonetheless have the ability to pay support, to terminate child support payments in anticipation that potential future social security disability payments will eventually make up the shortfall. That would leave the child without child support during this interim, a result clearly contrary to the public policy underpinning child support."

(*Paulhe v. Riley* (Wis. App. 2006) 722 N.W.2d 155, 161 (*Paulhe*); see *In re Marriage of Allen* (Ariz. App. 2016) 386 P.3d 1287, 1290 ["applying a credit for lump sum derivative benefits only when the obligor owes arrears would create an incentive to incur arrears, and would punish obligors with pending social security applications who keep their support payments current"]; *In re Marriage of Stephenson & Papineau* (Kan. 2015) 358

14

P.3d 86, 93−94 ["since the fundamental purpose of child support is to timely provide for the ongoing needs of a child, the law should not discourage an obligor from making continuous and timely payments"] (*Stephenson*); *Rathbone v. Corse* (Vt. 2015) 124 A.3d 476, 482 ["The policy of the child-support statute is not served by discouraging an obligor parent from making ongoing payments while waiting—possibly for years—for an SSDI benefit to be credited against an arrearage that accrues between the initial application for the benefit and its award."], footnote omitted (*Rathbone*).)

DCSS responds that it could have filed an enforcement action if Father had withheld support in anticipation of receiving disability benefits. But the fact that a defaulting parent may eventually face a writ of execution, contempt citation, or other enforcement order does not eliminate the financial harm inflicted on a child in the interim when a noncustodial parent stops paying child support.

"A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (§ 4053, subd. (a).) Section 4504, subdivision (b) accounts for Father's "circumstances and station" by requiring Daughter's derivative benefits be credited toward his child support obligation. Through no fault of his own, Daughter did not receive benefits for six years after she became eligible. Father had no control over how long it would take to determine his eligibility. To his credit, he honored his child support obligation in the interim. There is no basis in

15

law or equity for Father to be worse off because he ensured his child was supported while waiting an indeterminate number of years for the SSA to process his application.[8]

There is likewise no purpose in giving Daughter (and, in turn, Mother) a windfall that hinges on some unknown period of processing delay.  Had the delay been only six months, under DCSS's view, Father would have had to pay less net child support.  Guideline child support (§ 4050 et seq.) is designed to cover Daughter's *reasonable* needs consistent with her best interests.  (*Y.R. v. A.F.* (2017) 9 Cal.App.5th 974, 983−984; § 4053, subd. (e).)  As Father argues, the purpose is not to obtain as much child support as possible even through overpayment.  (See *In re Marriage of Wilson* (2016) 4 Cal.App.5th 1011, 1018 [enforcement of arrears could result in inequitable windfall to custodial parent to the extent the arrears bore "no relation to any support or care Minor actually received"].)[9]  Father satisfies his legal duty when Daughter receives her monthly child support.  It is immaterial whether the source is Father or Daughter's derivative benefits.  Neither Mother nor Daughter has a legal right to more.

---

[8]     DCSS contends courts may not rely on equitable principles "to avoid a clearly defined statutory mandate."  Because we have not found any such "clearly defined statutory mandate," we need not reach that argument.

[9]     DCSS argues its construction of section 4504 serves legitimate public purposes of: "1) maximizing support payments received by families, 2) reducing largely uncollectable support arrears totaling in the billions of dollars, and 3) improving California's performance on federal incentive measures to ensure increased funding for the State's Title IV-D child support program."  These macro-level policy objectives cannot justify an inequitable windfall based on an overpayment of child support in an individual case.

DCSS argues section 4504 seeks only "to provide relief to obligor parents who were/are *unable* to meet their support obligation without assistance" and that Father was not such a parent. But the statute is not so limited. Section 4504, subdivision (b) "is intended to mitigate the support obligation of living, noncustodial parents who by reason of disability or retirement are in *reduced* financial circumstances." (10 Witkin, Summary of Cal. Law (11th ed. 2017) Parent & Child, § 448, p. 559, italics added.) Father was such a person; he was permanently disabled from combat-related injuries and relied solely on VA disability benefits to cover expenses and child support until his SSDI application was approved.

Next, DCSS claims credit should be denied because the federal government, not Father, actually paid Daughter's derivative benefit. But pursuant to section 4504, subdivision (b), Daughter's benefit "shall be credited" toward Father's child support obligation. Father overpaid child support during the six-year period regardless of who funded the benefit. Moreover, Daughter received *SSDI*, not SSI. She was entitled to this benefit as a result of Father's contributions to the insurance program in years worked, regardless of how her derivative benefits were actually paid. (*In re S.M., supra,* 209 Cal.App.4th at p. 28.)

Finally, relying on federal statutes and regulations, DCSS argues that allowing a credit might force Mother "to locate funds unrelated to the child's lump sum benefit payment" or offset the amount against Father's ongoing child support obligation. As a result, it claims, "custodial parents would be reluctant to utilize payments made by the obligor during the application period for the child's support for fear of being burdened

17

with having to pay a portion, if not all of it back in the event Social Security derivative benefits are granted to the child."

DCSS is correct that a representative payee must use benefit payments "for the beneficiary's current maintenance"—i.e., for "obtaining food, shelter, clothing, medical care, and personal comfort items." (20 C.F.R. § 404.2040, subd. (a)(1).) In general, benefits must be used to promote the beneficiary's best interest. (20 C.F.R. § 404.2035, subd. (a).) The payee may use benefit payments to satisfy a creditor as to the beneficiary's prior debt "only if the current and reasonably foreseeable needs of the beneficiary are met." (20 C.F.R. § 404.2040, subd. (d).) Excess funds must be conserved or invested in trust for the beneficiary. (20 C.F.R. § 404.2045, subd. (a).) The payee is "responsible for paying back misused benefits." (20 C.F.R. § 404.2041, subd. (a).) Moreover, under the anti-attachment provision, "none of the moneys paid . . . under this title [42 U.S.C. § 401 et seq.] shall be subject to execution, levy, attachment, garnishment, or other legal process . . . . " (42 U.S.C. § 407, subd. (a).)

Simply put, none of these statutes or regulations address lump-sum payments for *past-due* benefits. We see nothing in these provisions preventing the use of benefit payments to credit an *overpayment* of child support that was advanced and used for the child's current maintenance. Only if we *prevent* Mother from making any refund from the lump-sum do we encounter the problem DCSS identifies—a custodial parent declining to use payments for the child's support while the noncustodial parent's application for federal benefits is pending.

18

The anti-attachment provision (42 U.S.C. § 407, subd. (a)) aims at "precluding beneficiaries from diverting their social security payments away from the statute's seminal goal of furnishing financial, medical, rehabilitative and other services to needy individuals." (*Department of Health & Rehabilitation Services v. Davis* (5th Cir. 1980) 616 F.2d 828, 831.) Father is not using legal process to gain control over daughter's derivative benefits. Nor is he a creditor looking to collect from Daughter's benefits to satisfy a debt at the expense of her current support. Instead, he *advanced* moneys to provide for Daughter's current support in expectation of receiving credit sometime in the future. Allowing credit does not run afoul of federal statutes or regulations restricting the use of benefit payments or frustrate the policies underlying social security benefits and child support. (See *In re Marriage of Denney, supra,* 115 Cal.App.3d at p. 554 ["The purpose of providing social security disability benefits for minor children is to provide support."]; *Y.R. v. A.F., supra,* 9 Cal.App.5th at pp. 983−984 [child support provides for a child's reasonable needs]; Black's Law Dictionary (10th ed. 2014) [child support is "[a] parent's legal obligation to contribute to the economic maintenance and education of a child"].)

Indeed, DCSS overlooks the fact that *Father's* disability payments are garnished each month to cover child support. This is allowed because of a carve-out to the anti-attachment provision applicable to child support and alimony. (42 U.S.C. § 659, subd. (a); 20 C.F.R. § 404.1820, subd. (b).) The same exception would seem to apply to Mother and allow her to refund child support overpayments resulting from Daughter's receipt of past-due benefits.

19

The court rejected DCSS's argument that giving credit would be the functional equivalent of ordering reimbursement from Daughter's derivative benefits. It explained it was ordering credit based on Father's *overpayment* of child support. DCSS takes issue with this "fictional distinction." We tend to agree, although it does not help DCSS. As a natural custodial parent, Mother was exempted from the rule prohibiting commingling of a representative payee's funds with a beneficiary's payments. (20 C.F.R. § 404.2035, subd. (b).) Money is fungible, and we see little reason to erect an artificial barrier under these facts between Daughter's lump sum payment and *other* funds Mother must use for any refund. (Cf. *Stephenson, supra,* 358 P.3d at p. 100 [trial court could order "reimbursement of the duplicative payments from funds that are discrete from SSDI benefits"]; *In re Marriage of Allen, supra,* 386 P.3d at p. 1292 [same].)[10]

In short, we agree with the trial court that section 4504, subdivision (b) requires Father to receive credit against his already-paid child support obligation based on Daughter's lump-sum benefit payment. This interpretation tracks the plain language of the statute, the legislative history, and the perverse consequences that would follow a

---

[10] As a practical matter, a request to credit Social Security derivative benefits against a child support obligation will likely arise *only* where federal benefits are paid to a representative payee who is also a custodial natural parent. In any event, we express no view as to the treatment of benefits by a representative payee who is *not* a custodial natural parent.

contrary interpretation. To preclude Father from retroactive credit for Daughter's lump-sum benefit would essentially force Father to overpay child support.[11]

As previously noted (*ante,* fn. 2), the trial court did not order a refund or offset. Instead, it simply established the method by which a credit should be applied:

> "[O]nce the derivative benefits were finally paid by the federal government, that was the amount that should have been attributed to the payment of support, . . . or credited first and then the voluntary amount be the overpayment, which would then be subject to being refunded.

> "So the way that this should be accounted is that the derivative benefits would be applied first in the amount of 596 per month, effective on June 1st, 2009, continuing forward. And if any voluntary payments were made, those should be [applied] secondarily in excess and serve as a credit."

We agree with the trial court that Daughter's derivative benefit had to be credited *first* before crediting any child support payments Father made between June 2009 and June 2015.[12] Any other construction would nullify our interpretation that section 4504, subdivision (b) *requires* credit for Daughter's lump-sum benefit payment.

C

On our own motion, we modify the order to correct a clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186−187; Code Civ. Proc., § 43.) The trial court relied on counsel's representation that Daughter's monthly benefit was constant at $596 per

---

[11]    Given our result, we need not reach Father's contention that interpreting section 4504, subdivision (b) to prohibit a credit would violate the Equal Protection Clause.

[12]    The court referred to these as "voluntary payments" but recognized that Father made them to comply with his child support obligation and not fall into arrears.

21

month commencing June 1, 2009.  Actually, her benefit was adjusted in December 2011, December 2012, December 2013, and December 2014 for cost of living increases and only became $596 per month in 2015.  In addition, Father's child support obligation was not constant over those six years.  It increased from $359 per month to $719 per month in September 2012.

As Father acknowledges on appeal, to the extent Daughter's derivative benefit *exceeded* his child support obligation in a given month, that excess was a gratuity to the child and may not be recovered.  (See *Paulhe, supra,* 722 N.W.2d at p. 162, fn. 8; *Stephenson, supra,* 358 P.3d at p. 89; *Rathbone, supra,* 124 A.3d at p. 482.)  Therefore, from June 2009 to September 2012, assuming there were no arrears, Father was entitled to credit of only the $359 per month he paid, and the excess derivative benefit was a gratuity to Daughter.  From September 2012 to June 2015, Father's child support obligation exceeded Daughter's benefit.  During this period, assuming no arrears, Father overpaid by an amount equivalent to Daughter's derivative benefit.  Mother (as Daughter's representative) received $568 per month in 2012, $577 per month in 2013, $586 per month in 2014, and $596 per month in 2015.[13]

### DISPOSITION

We modify the order dated December 20, 2016 to reflect a credit to Father of $395 per month from June 2009 to August 2012; $568 per month from September 2012 to

---

[13]    Out of the lump sum payment, $6,816 reflected payments for 2012; $6,924 reflected payments for 2013; and $7,032 reflected payments for 2014.  Dividing each of these by twelve (for the calendar year) produces the monthly benefit rates for those years.

22

December 2012; $577 per month from January 2013 to December 2013; $586 per month from January 2014 to December 2014; and $596 per month from January 2015 to June 2015. Credits based on Daughter's derivative benefits must be applied first against Father's child support obligation. Any voluntary payments by Father between June 2009 and June 2015 must be applied second. As so modified, the order is affirmed. Father is entitled to recover costs on appeal.

DATO, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.

23